In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2387

MARIA DEL CONSUELO CEVILLA,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

---

Petition to Review an Order of the
Board of Immigration Appeals.
No. A77-771-892.

---

ARGUED FEBRUARY 15, 2006—DECIDED MAY 1, 2006

---

Before POSNER, ROVNER, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. Maria Cevilla, a citizen of Mexico, entered the United States in 1990 on a visitor's visa. Eventually the government initiated proceedings to remove (deport) her. She conceded removability but sought cancellation of removal on the basis that she met the dual requirements for that form of relief of (1) having resided in the United States continuously for 10 years beginning in 1990 and (2) removal would cause extreme hardship. 8 U.S.C. § 1229b(b)(1). After a hearing, the immigration judge determined that neither requirement had been met and denied relief. The Board of Immigra-

tion Appeals affirmed. Nine months later Cevilla filed a motion with the Board to reopen the proceeding, attaching to the motion new evidence concerning hardship. The Board denied the motion, noting that it was untimely, but adding:

> The new evidence presented by the respondent with regard to the physical and emotional difficulties faced by her mother and son might have caused us to consider a *sua sponte* grant of the motion. However, the Immigration Judge also made a determination, based on the inconsistent testimony of the respondent, her mother and her sister, that the respondent had not established the statutorily-required 10 years of continued presence in the United States. The Immigration Judge's decision in this regard has not been sufficiently challenged on appeal to warrant a finding by this Board that it was clearly erroneous.

Cevilla asks us to review the denial.

The government argues that we have no jurisdiction; that while the Board can if it wishes entertain an untimely petition to reopen, 8 C.F.R. § 1003.2(a); *Ajose v. Gonzales*, 408 F.3d 393, 395 (7th Cir. 2005); *Joshi v. Ashcroft*, 389 F.3d 732, 734 (7th Cir. 2004); *Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 248-49 (5th Cir. 2004), its decision whether to do so or not is unreviewable. A number of cases do so hold, on the ground that the decision to forgive an untimely filing is purely discretionary. *Martinez-Maldonado v. Gonzales*, 437 F.3d 679, 682-83 (7th Cir. 2006); *Pilch v. Ashcroft*, 353 F.3d 585, 586 (7th Cir. 2003); *Assaad v. Ashcroft*, 378 F.3d 471, 475-76 (5th Cir. 2004) (per curiam); *Belay-Gebru v. INS*, 327 F.3d 998, 1001 (10th Cir. 2003); *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003). But as emphasized in *Belay-Gebru* and *Calle-Vujiles*, all are cases in which the Board's order

that was sought to be reviewed was indeed based on an exercise of uncabined discretion rather than on the application of a legal standard. (Compare *Smriko v. Ashcroft*, 387 F.3d 279, 292-93 (3d Cir. 2004).) The Administrative Procedure Act denies judicial review of agency action in cases where there is no law for a reviewing court to apply. 5 U.S.C. § 701(a)(2); *Delgado v. Gonzales*, 428 F.3d 916, 920 (10th Cir. 2005); *Schneider v. Feinberg*, 345 F.3d 135, 148 (2d Cir. 2002) (per curiam). This is not such a case; the denial of the motion to reopen was based on a determination that a factual finding by the immigration judge was not clearly erroneous.

The government fails to note, however, that the general "no law to apply" principle of judicial review of administrative action has been superseded in the immigration context by 8 U.S.C. § 1252(a)(2), as amended by the REAL ID Act in May 2005. Subsection (B) of section 1252(a)(2) provides that "notwithstanding any other provision of law . . . no court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), *1229b*, 1229c, or 1255 of this title" (emphasis added). Both the Board's initial order, and its order declining to reopen the case, are "judgment[s] regarding the granting of relief under section . . . 1229b." However, subsection (D) of section 1252(a)(2), also added by the REAL ID Act and thus post-dating the cases on which the government relies, provides that "nothing in subparagraph (B) . . ., or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or *questions of law* raised upon a petition for review filed with an appropriate court of appeals in accordance with this section" (emphasis added). Even before the enactment of subsection (D), we had held in *Morales-Morales v. Ashcroft*, 384 F.3d 418, 421-23

(7th Cir. 2004), that the interpretation by an immigration judge of the statutory phrase "continuous physical presence" was judicially reviewable, and *Cuellar Lopez v. Gonzales*, 427 F.3d 492, 493-94 (7th Cir. 2005), reaffirmed this holding after the enactment of subsection (D). Neither case, however, involved review of the *application* of the "continuous physical presence" standard to the facts of the case.

Noting that subsection (B) of 8 U.S.C. § 1252(a)(2) is captioned "discretionary denials of relief," several courts have held that despite its uncompromising language it does not bar judicial review of rulings that are not discretionary in character. *Ibarra-Flores v. Gonzales*, 439 F.3d 613, 618 (9th Cir. 2006); *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 705 (6th Cir. 2005); cf. *Garcia-Melendez v. Ashcroft*, 351 F.3d 657, 661 (5th Cir. 2003); *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 850-51 (9th Cir. 2004). The Second Circuit disagrees, noting that subsection (D) explicitly confines judicial review to constitutional questions and "questions of law." *Bugayong v. INS*, 442 F.3d 67, 73 (2d Cir. 2006) (per curiam); *Chen v. U.S. Dep't. of Justice*, 434 F.3d 144, 151-55 (2d Cir. 2006).

The difficulty that has given rise to this disagreement is that while the purpose of the door-closing statute appears to be to place discretionary rulings beyond the power of judicial review (hence the caption of subsection (B)), the statute itself, read literally, goes further and places all rulings other than those resolving questions of law or constitutional issues beyond the power of judicial review. A further complication is that the application of a legal standard (whether negligence, possession, or, as in this case, continuous physical presence) to facts is both recognized to be different from a purely factual determination (for example, that the defendant was driving more than 60 m.p.h when he struck the plaintiff) and reviewed by the same

clearly-erroneous or substantial-evidence standard as a purely factual determination. E.g., *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002); *St. Mary's Medical Center v. Disco Aluminum Products Co.*, 969 F.2d 585, 588-89 (7th Cir. 1992); *Mucha v. King*, 792 F.2d 602, 604-05 (7th Cir. 1986); *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1334 and n. 29 (11th Cir. 1999).

The issue of the meaning of "questions of law" in section 1252(a)(2)(D) is discussed most thoroughly in *Chen v. U.S. Dep't. of Justice, supra*, which reviews the legislative history and finds that originally the phrase "questions of law" had been "pure questions of law," that "pure" had been dropped as "superfluous," and that Congress had intended by its use of the phrase "questions of law" to distinguish between "statutory-construction questions" and "factual questions" and to permit judicial review only of answers to the former. 434 F.3d at 153, citing the conference report, H.R. Rep. No. 109-72, at 175 (2005). See also *Ramaden v. Gonzales*, 427 F.3d 1218, 1222 (7th Cir. 2005). The report of a conference committee is one of the more reliable forms of legislative history, *Bassiouni v. FBI*, 436 F.3d 712, 716 (7th Cir. 2006); *Disabled in Action of Metropolitan New York v. Hammons*, 202 F.3d 110, 124 (2d Cir. 2000); *RJR Nabisco, Inc. v. United States*, 955 F.2d 1457, 1462-63 (11th Cir. 1992); *Railway Labor Executives Ass'n v. ICC*, 735 F.2d 691, 701 (2d Cir. 1984), and the committee's explanation is consonant with the ordinary meaning of "questions of law" and with Congress's evident purpose of limiting judicial review of removal cases.

*Chen* closes one door to relief. But because constitutional rulings are excepted from the door-closing statute along with rulings on questions of law, a petitioner might want to argue that the analysis of the facts by the immigration judge or the Board of Immigration Appeals

had been so wacky as to constitute a denial of due process of law, *Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596-97 (3d Cir. 2003), though a mere procedural or evidentiary error must not be confused with a denial of due process. *Saloum v. U.S. Citizenship & Immigration Services*, 437 F.3d 238, 243-44 (2d Cir. 2006); *Sanchez-Cruz v. INS*, 255 F.3d 775, 779 (9th Cir. 2001); *McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003); *Toscano-Gil v. Trominski*, 210 F.3d 470, 474 (5th Cir. 2000). But no due process challenge may be made unless the challenger has been (or is threatened with being) deprived of life, liberty, or property. *Bangura v. Hansen*, 434 F.3d 487, 495-96 (6th Cir. 2006). Cevilla has a liberty interest in remaining in the United States, but prevailing on the issue of continuous physical presence in the United States would not give her any right to remain here. It would merely give her an opportunity to establish extreme hardship, which is an appeal to the government's discretion, rather than a substantive entitlement. *Guerra-Soto v. Ashcroft*, 397 F.3d 637, 639 n. 1 (8th Cir. 2005). A procedural entitlement is not a liberty interest. *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983); *Hewitt v. Helms*, 459 U.S. 460, 471 (1983); *Russ v. Young*, 895 F.2d 1149, 1153 (7th Cir. 1990); *Sealed v. Sealed*, 332 F.3d 51, 57 (2d Cir. 2003). And so "an alien's right to due process does not extend to proceedings that provide only such discretionary relief." *Hamden v. Gonzales*, 425 F.3d 1051, 1060-61 (7th Cir. 2005); see *Dandan v. Ashcroft*, 339 F.3d 567, 575 (7th Cir. 2003); *Hernandez v. Gonzales*, 437 F.3d 341, 345-46 (3d Cir. 2006).

A complicating factor is that the Board has signaled that it would probably accept Cevilla's claim of extreme hardship if it thought she had been continuously present in the United States for the required 10 years. Does this mean that

establishing presence would effectively confer a substantive entitlement on her? It would not even if all the statutory criteria, including extreme hardship, are present, because they are merely preconditions to asking the government to exercise discretion in the alien's favor. See 8 U.S.C. § 1229b(b)(1); *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004); *Romero-Torres v. Ashcroft*, 327 F.3d 887, 890 (9th Cir. 2003); *Alvidres-Reyes v. Reno*, 180 F.3d 199, 202 (5th Cir. 1999); cf. *Cook v. Wiley*, 208 F.3d 1314, 1322-23 (11th Cir. 2000); *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998).

And Cevilla could not prevail even if she had a property or liberty interest. For although the Board's determination that she failed to prove 10 years of continuous residence is not persuasive, there was no denial of due process.

Cevilla testified initially that she first traveled to the United States in 1990 with her mother, that her first child was born here that year, and that she had resided continuously here since. Had this been the only testimony, the immigration judge would have accepted that Cevilla had proved the requisite continuity of residence. *Morales-Morales v. Ashcroft*, *supra*, 384 F.3d at 427-28; *Lopez-Alvarado v. Ashcroft*, *supra*, 381 F.3d at 854. But he was disturbed by the conflicting evidence of Cevilla's mother and sister. The mother testified that she entered by herself sometime before 1992, then went back to Mexico that year and brought her daughter back and that the daughter's first child was born that year, that is, 1992. At the time of her testimony, the mother was an elderly woman in poor physical and mental health. Her testimony was not plausible, because the child's birth certificate indicated that he had been born in 1990. Nevertheless the immigration judge gave weight to the testimony. He should not have.

The sister testified that Cevilla first visited the United States in 1985 and traveled back and forth between Mexico and the United States until 1990 when she settled here for good. The fact that Cevilla did not reside continuously in the United States from 1985 is irrelevant, since she needed only to have resided here from 1990 to satisfy the 10-year requirement. But the immigration judge thought that the inconsistency between Cevilla's testimony that she first entered in 1990 and the sister's testimony undermined Cevilla's credibility because, after hearing her sister testify, Cevilla acknowledged that she had been in the United States off and on before 1990 though she insisted that 1990 was the date of her last entry. Since the only relevant date of entry was the date on which her continuous residence in the United States began, and since the fact that she had been here intermittently before moving here for good would not make it less probable that she had indeed later moved here for good, it is difficult to understand why the immigration judge thought that "the inconsistencies in the testimonial evidence" warranted a finding that Cevilla had left the United States after 1990. Her first child was born that year, and no reason has been suggested why she might have gone back to Mexico since then. There is no indication of family or business in Mexico; her mother is in the United States along with seven siblings; both her children are U.S. citizens. She would have had to travel to and from Mexico illegally in order to avoid revealing a break in her residence, and that would have been a risky undertaking. Especially considering the immigration judge's inexplicable decision to credit the mother's obviously erroneous testimony, we do not think that the Board's finding with regard to continuous presence is sound. Nevertheless, the analysis that generated the finding, the procedure and evidence on which that analysis rested, and

the finding itself are not so unreasonable as to constitute a denial of due process.

For all these reasons, the petition for review must be

DENIED.

A true Copy:

     Teste:

                          _____
                          *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*