**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued December 12, 2006
Decided December 18, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No.  05-3993

| | |
|---|---|
| MANUEL GARCIA,<br>        *Petitioner*, | Petition for Review of an Order of<br>the Board of Immigration Appeals |
| *v.* | No. A77-770-966 |
| ALBERTO R. GONZALES,<br>        *Respondent*. | |

**ORDER**

Manuel Garcia, a Mexican citizen, applied for cancellation of removal after the initiation of removal proceedings against him.  The Immigration Judge found Garcia statutorily ineligible for this relief because he failed to demonstrate that he was physically present in the United States for ten years prior to the initiation of the proceedings, and the Board of Immigration Appeals affirmed.  Garcia now petitions for review, and we deny his petition.

Garcia first entered the United States without inspection in December 1989 through San Ysidro, California and has remained in the United States except for two trips he took to Mexico.  He traveled first in December 1992 for seven weeks

before returning without inspection through Nogales, Arizona. He traveled a second time in December 1994 to attend to his ailing mother. He first attempted to reenter without inspection through Nogales in January 1995, but about one mile inside the United States he encountered an immigration officer who informed him that he could either appear before an IJ or sign a voluntary departure form and leave the United States. Garcia signed the form to avoid incarceration and returned to Mexico, but reentered the United States without inspection the next day.

In June 2000, the INS initiated removal proceedings against Garcia and he applied for cancellation of removal, a form of relief that allows the Attorney General to cancel removal of certain deportable or inadmissable aliens. *See* 8 U.S.C. § 1229b(b). To be eligible for this relief, an alien must prove that he (1) has been continuously present in the United States for ten years prior to seeking this relief; (2) displays good moral character; (3) has not been convicted of certain, enumerated criminal offense; and (4) his removal would result in "exceptional and extremely unusual hardship" to his United States citizen or lawful permanent resident family members. *Id.* at § 1229(b)(1); *Hashish v. Gonzales*, 442 F.3d 572, 574-575 (7th Cir. 2006).

The IJ denied Garcia's application, concluding that he was statutorily ineligible for cancellation of removal because he could not prove that he had been continuously present in the United States for the ten years immediately preceding his application. Under § 1229b(a)(2), Garcia's brief trips to Mexico alone did not end his continuous physical presence because his trips never lasted more than 90 days individually, nor amounted to 180 days of absence in the aggregate. *See* 8 U.S.C. § 1229b(d)(2). However, citing *In re: Hilario Romalez-Alcaide*, 23 I. & N. Dec. 423, 424 (BIA 2002), which held that "a departure that is compelled under threat of the institution of deportation or removal proceedings is a break of physical presence," the IJ concluded that Garcia's return to Mexico after agreeing to depart voluntarily in lieu of appearing before a judge constituted a break in his physical presence.

The BIA adopted and affirmed the IJ's decision, noting that the IJ correctly determined that Garcia was ineligible for cancellation of removal because his continuous physical presence "ended at the time he was compelled to depart the United States under threat of the institution of removal proceedings in 1995." Garcia moved for reconsideration, but the BIA denied this motion. On appeal, Garcia challenges only the denial of his request for cancellation of removal.

We must first determine if we have subject matter jurisdiction over Garcia's case, even if, as is the case here, the parties fail to raise this issue. *See Morales-Morales v. Ashcroft*, 384 F.3d 418, 421 (7th Cir. 2004). Notably, 8 U.S.C.

§ 1252(a)(2)(B) limits federal appellate review of decisions regarding cancellation of removal. However, we have held, like our sister circuits, that we retain jurisdiction to review nondiscretionary questions of statutory interpretation, such as the meaning of the term "continuous physical presence." *See Morales-Morales*, 384 F.3d at 422-23; *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 217 (5th Cir. 2003). Since the passage of the REAL ID Act of 2005, which allows courts to review "constitutional claims or questions of law," we have continued to permit review of "question[s] of statutory interpretation," *Cuellar Lopez v. Gonzales*, 427 F.3d 492, 495 (7th Cir. 2005), though we may not review the application of facts to legal standards. Pub. L. No. 109-13, 119 Stat. 231, § 106(a)(1)(A)(iii) (amending 8 U.S.C. § 1252(a)(2)(D)); *Cevilla v. Gonzales*, 446 F.3d 658, 661 (7th Cir. 2006) (holding that court lacks jurisdiction to review whether IJ correctly applied facts to the continuous physical presence standard). To the extent Garcia raises issues of statutory construction, we have jurisdiction to review his claims.

Proceeding to the merits, Garcia argues that the IJ and BIA misconstrued the statutory requirements for cancellation of removal when they found him ineligible for this relief. He focuses on the interpretation of § 1229b(b)(1)(A), which requires an alien to demonstrate that he "has been physically present in the United States for a continuous period of not less than ten years" before applying for relief. He argues that the BIA erred when it concluded that he broke his continuous physical presence by briefly leaving the United States and signing a voluntary departure form, in lieu of appearing before a judge.

We have held that "voluntary departure under threat of deportation or removal proceedings . . . constitutes a break in continuous physical presence," but an informal agreement to leave the country after a brief detention by Border Patrol agents does not. *Morales-Morales*, 384 F.3d at 428. Under current regulations, formal voluntary departure requires an alien to apply for relief, accepting its terms and conditions, and mandates that voluntary departure orders be communicated in writing on a specified form, warning the alien of the penalties for violating the order. 8 C.F.R. § 240.25(b), (c). We have compared these "elaborate conditions" to a "functional plea bargain," where the "alien leaves . . . in lieu of being placed in proceedings [and] . . . [t]here is no legitimate expectation by either of the parties that an alien could illegally reenter and resume a period of continuous physical presence." *Morales-Morales,* 384 F.3d at 426, 428 (citations and quotation marks omitted). In *Morales-Morales*, the petitioner testified that over a six-day period, she repeatedly entered the United States without inspection, encountered Border Patrol agents who informally detained her, and consequently agreed to return to Mexico. The IJ determined that her agreement to leave the United States constituted a break in her physical presence. We reversed, holding that her agreement to leave did not constitute "formal voluntary departure," and therefore did not constitute a break in her continuous physical presence in the United States. *Id*. at 428.

Garcia likens his case to *Morales-Morales*, and argues that the IJ and BIA incorrectly concluded that his informal agreement to leave the United States constituted a break in his physical presence. He maintains that there is no evidence that a voluntary departure order was issued pursuant to the "elaborate conditions" in 8 C.F.R. § 240.25 because the background check performed by the Department of Homeland Security failed to uncover any record of his encounter with the immigration officer or a copy of the voluntary departure form. He argues that the IJ and BIA erred in concluding that this brief trip, without the hallmarks of a formal voluntary departure, constituted a break in his physical presence.

But Garcia's case is distinguishable from *Morales-Morales*. First, Garcia cites regulations currently in effect, not those in effect in January 1995 when he agreed to return to Mexico. The Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) ushered in new voluntary departure regulations, which were in effect both when Morales-Morales attempted to enter and now. *See* 8 C.F.R. § 240.25. However, in 1995, before the passage of IIRIRA, 8 U.S.C. § 1252(b) allowed certain aliens to voluntarily depart from the United States before the initiation of deportation proceedings if they conceded their deportability, but the implementing regulations did not require the alien to file an application or the agency to issue written decisions, as they do today. *Compare* 8 C.F.R. § 241.5(b) (1995), *with* 8 C.F.R. § 240.25 (2005). Garcia's written agreement to leave the United States to avoid appearing before an IJ met the looser procedural requirements in the 1995 regulations and was sufficient to extinguish any legitimate expectation that he could illegally reenter and resume a period of continuous physical presence. *See Palomino v. Ashcroft*, 354 F.3d 942, 943, 945 (8th Cir. 2004) (holding that alien's continuous physical presence ended when he chose to return to Mexico after entering without inspection and encountering INS officials who gave him the option to depart voluntarily or face deportation proceedings); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 218 (5th Cir. 2003) (holding that administrative voluntary departure granted at the border constitutes a break in physical presence).

Furthermore, Garcia's agreement to leave the United States acted like a functional plea bargain, unlike Morales-Morales' agreement to simply turn around and return to Mexico. Garcia was not simply picked up by Border Patrol agents and returned to Mexico, *cf. Morales-Morales*, 384 F.3d at 420, 427. Instead, presented with the option of either voluntarily returning to Mexico or appearing before an IJ, Garcia left the United States and avoided an appearance before an IJ and certain incarceration. This agreement formed a functional plea bargain and constituted a break in his physical presence.

Garcia also argues that he agreed to return to Mexico not under the threat of removal proceedings, but rather under threat of incarceration and the need to seek

medical attention for his brother, who hurt his ankle before their encounter with the immigration officer. Garcia contends that *Romalez* held that only departure "compelled under threat of the institution of deportation or removal proceedings is a break of physical presence." 23 I. & N. Dec. at 424. He maintains that because he departed to avoid incarceration, he retained a legitimate expectation that he could return to the United States and resume his period of continuous physical presence for purposes of cancellation of removal.

But we lack jurisdiction to address Garcia's ultimate concern—the BIA's finding, consistent with *Romalez*, that he "was compelled to depart the United States under threat of the institution of removal proceedings." Here, Garcia does not contest the legal standard used by the BIA, but challenges its factual finding, contending that he left the United States fearing incarceration and hoping to find medical help for his brother. But we lack jurisdiction to review whether the IJ or BIA correctly applied the continuous physical presence legal standard to the facts in Garcia's case. *See Cevilla*, 446 F.3d at 661.

Even if we could exercise jurisdiction over the Board's ruling, substantial evidence supports its findings. Garcia consistently testified that he chose to return to Mexico to avoid appearing before an IJ, and his repeated entries without inspection demonstrate that he knew his presence in the United States was not authorized. Given his illegal entries, the BIA and IJ reasonably inferred that Garcia knew that his appearance before a judge would result not only in incarceration, but also in his removal from the United States.

Accordingly, we deny the petition for review.