In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2719

ANDRZEJ SKORUSA,

*Petitioner,*

v.

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A77-646-942

ARGUED FEBRUARY 21, 2007—DECIDED APRIL 5, 2007

Before EASTERBROOK, *Chief Judge*, and FLAUM and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. An immigration judge ("IJ") denied Andrzej Skorusa's application for adjustment of status after considering, among other things, evidence that Skorusa had illegally obtained a permanent resident stamp in his passport. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision, and Skorusa petitions this Court for review, claiming that his hearing did not comply with governing statutes. For the following reasons, we dismiss the petition.

## I. BACKGROUND

In August 1991, Andrzej Skorusa, a citizen of Poland, entered the United States without inspection after paying $7,000 to board a United States bound ship. Skorusa has remained in the country ever since. In 2002, he hired a lawyer to help him apply for labor certification as a diesel mechanic. The Labor Department granted Skorusa's application, and the Department of Homeland Security ("DHS") subsequently approved an immigrant petition filed by Skorusa's employer. Skorusa then sought adjustment of status to permanent resident.

During a May 5, 2005 hearing, DHS objected to Skorusa's request for adjustment of status because Skorusa previously had attempted to purchase permanent residency from a corrupt immigration official. In March of 2000, Skorusa met a man named Ziggy who told him that there was a travel bureau where he could "proceed . . . for a green card quick." Ziggy advised Skorusa that the expedited service would cost $12,000 and assured him that the process was "real and legal." Ziggy instructed Skorusa to visit an INS Application Support Center to get fingerprinted and to fill out an adjustment of status application before going to the travel bureau.

On April 5, 2000, Ziggy and Skorusa went to the travel bureau, which was located on Belmont Avenue in Chicago, Illinois. Skorusa was led to a back room where he met with an immigration officer, who was dressed in civilian clothing. The officer reviewed Skorusa's application for adjustment of status and asked Skorusa questions about it. At the end of the interview, the officer congratulated Skorusa, stamped his passport with a permanent resident stamp, and explained that Skorusa could now "fly to Poland and get a real social security number." After the interview, Skorusa paid Ziggy the $12,000 fee, but did not give any money to the immigration officer.

Unbeknownst to Ziggy and Skorusa, the immigration official that conducted the interview was an INS adjudications officer participating in an undercover investigation with the FBI called "Operation Durango." The officer, Clarence Robinson, testified at Skorusa's adjustment of status hearing. According to Robinson, Operation Durango sought to expose immigration "brokers" who helped aliens illegally obtain immigration benefits. Robinson played the role of a corrupt immigration officer who was taking bribes to provide green cards. Throughout the operation, during which he interviewed 250-300 aliens, Robinson tried to make the process seems as official as possible. He required the aliens to obtain medical exams and fingerprints and interviewed them using the same questions he would ask in a legitimate setting. Nonetheless, Robinson testified that he informed the aliens that he was involved in an illegal operation and advised them of what to say if immigration authorities stopped them. At the interview's conclusion, Robinson would place a stamp in the alien's passport indicating that the alien had been granted permanent residency. Given the large number of interviewees, Robinson could not recall specifically his interview with Skorusa.

Several months before the hearing, the IJ issued Robinson a subpoena (at Skorusa's request) that ordered him to appear at Skorusa's hearing and to "produce . . . notes, correspondence, memoranda, pictures and videos associated [with Skorusa's case]." On the day of the hearing, Robinson had not produced surveillance videos from the travel bureau that Skorusa believed were in DHS's possession. When the government called Robinson to testify, Skorusa moved to strike the testimony, arguing that he was disadvantaged by not having the video. The IJ and Skorusa's lawyer, Justin Burton, had the following exchange:

> JUDGE: Well, why are you at a disadvantage . . . if something comes up during the hearing, you can request time to try and rebut it.
>
> BURTON: Well, if there's real evidence out there, including a video that can be used to cross-examine what the officer is going to be saying, I certainly think it's relevant and . . . crucial to be able to get to the truth of this matter.
>
> JUDGE: Well, let's hear the witness' testimony first, and then I'll decide whether or not a continuance should be granted.

Robinson testified that his meetings with aliens were recorded and that FBI possessed the videotapes. Robinson stated that he did not have access to the videotapes, but could obtain them through the proper channels if necessary. After questioning Robinson, the IJ asked Burton to make arguments on the case. Burton presented a series of arguments concerning Skorusa's eligibility for adjustment of status, but he did not renew his objection about the subpoena, nor did he request a continuance.

At the close of the hearing, the IJ denied Skorusa's application for adjustment of status, reasoning that any equities favoring adjustment were outweighed by adverse factors.[1] The adverse factors included Skorusa's illegal mode of entry as well as his procurement of the permanent residence stamp, which the IJ concluded Skorusa "clearly knew, or should have known" was illegal. Skorusa appealed the IJ's decision to the BIA, and the BIA affirmed. The BIA addressed Skorusa's contention that the IJ violated his right to cross-examination by not requiring

---

[1] Equities included Skorusa's lengthy presence in the U.S., his lack of any criminal history, his steady job history, and his home ownership.

DHS to turn over the videotapes. The BIA determined that the subpoena requested only evidence in DHS's possession, and because DHS did not have possession of the videos, it had complied with the terms of the subpoena. Accordingly, the BIA concluded that the IJ did not err by not granting a continuance. Skorusa petitions this Court for review.

## II. DISCUSSION

Skorusa argues that the IJ violated his statutory rights under the Immigration and Nationality Act ("INA") and his constitutional right to due process by not granting him a continuance to obtain the videotapes. Whether the IJ complied with the INA and the Constitution are questions of law that we review de novo, but with deference to the agency's reasonable interpretations of the INA. *See Marquez v. INS*, 105 F.3d 374, 378 (7th Cir. 1997). Although this Court generally cannot review orders denying applications for adjustment of status, 8 U.S.C. § 1252(a)(2)(B), we retain jurisdiction to review strictly legal issues, such as whether an immigration hearing complied with the requirements of INA. 8 U.S.C. § 1252(a)(2)(D); *see also Cevilla v. Gonzales*, 443 F.3d 658, 660 (7th Cir. 2006).

Skorusa's claim that the IJ violated the INA by improperly denying him a continuance encompasses two arguments. First, he claims that the IJ's denial deprived him of his statutory right to present all relevant evidence at an impartial hearing. *See* 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.1(c). Second, Skorusa claims that the IJ's failure to continue the proceedings violated the INA and implementing regulations regarding the issuance and enforcement of subpoenas.

We must reject Skorusa's argument that the IJ, by not granting Skorusa a continuance, deprived him of his

statutory right to present relevant evidence. The IJ advised Skorusa's counsel that he could, if necessary, request time to rebut Robinson's testimony, but counsel made no such request, either during Robinson's testimony or during closing argument. Although the IJ indicated the he would "decide whether or not a continuance should be granted," after Robinson testified, that statement did not amount to the denial of a continuance. Rather, the IJ recognized the possibility that a continuance might be necessary if Robinson and Skorusa provided completely different accounts of what happened at the travel bureau. As it turned out, the only point of contention was whether Robinson told Skorusa that what they were doing was illegal, and Robinson could not recall his interview with Skorusa, so their testimony was consistent in any case. In short, we can find no fault in an IJ's failure to grant relief where none was requested.

Moreover, our review of the administrative record shows that the IJ provided Skorusa a reasonable opportunity to present his case for adjustment of status, thus complying with 8 U.S.C. § 1229a(b)(4)(B). Skorusa was able to testify on his own behalf and cross-examine Robinson. He also provided the court with documentary evidence, such as his labor certification and past tax returns, all of which the IJ considered in his oral decision.

Skorusa also argues that, by denying the continuance, the IJ violated INA provisions regarding subpoenas. Pursuant to 8 U.S.C. § 1229a(b)(1), an "immigration judge may issue subpoenas for the attendance of witnesses and presentation of evidence." Implementing regulations provide that "[a] subpoena shall . . . command the person . . . to which it is addressed to produce the books, papers, or documents specified in the subpoena." 8 C.F.R. § 287.4(b)(2). Should a witness fail to comply with the terms of a subpoena, the Code of Federal Regulations directs the IJ to request an order from a United States

District Court requiring production. 8 C.F.R. § 287.4(d). Skorusa claims that the relevant regulations compelled the IJ to order production of the video. Skorusa's argument assumes that Robinson did not comply with the subpoena because he withheld the surveillance video. In determining whether Robinson had complied with the subpoena, however, the BIA and the IJ reasonably interpreted it as requiring DHS to produce only that evidence in its possession. As it turned out, DHS did not possess the surveillance videos—the FBI did. Because, as the BIA concluded, Robinson did not violate the terms of the subpoena, the IJ had no statutory obligation to continue the proceedings. Accordingly, Skorusa's hearing complied with the INA, and we have no jurisdiction to reach the merits of his claim for adjustment of status.[2] We therefore dismiss the petition for review.

## III. CONCLUSION

For the foregoing reasons, we DISMISS Skorusa's petition for want of jurisdiction.

---

[2] Because we have held previously that an immigration hearing that satisfies the statutory requirements of §1229a(b)(4)(B) also satisfies the requirements of the due process clause, *see, e.g., Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006)*,* we decline to consider Skorusa's due process claim. *See Boyanivskyy v. Gonzales*, 450 F.3d 286, 293 (7th Cir. 2006) (noting that this Court should only reach a due process claim if a petitioner complains that the procedures outlined in the relevant statutes are constitutionally deficient).

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*