In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 07-1548

ARMANDO JIMÉNEZ VIRACACHA, *et al.*,

*Petitioners*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent*.

———————

Petition for Review of an Order of the
Board of Immigration Appeals.

———————

ARGUED DECEMBER 7, 2007—DECIDED MARCH 3, 2008

———————

Before EASTERBROOK, *Chief Judge*, and MANION and
KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  Armando Jiménez Viracacha
arrived in the United States from Colombia in Decem-
ber 1998 with a visitor's visa authorizing a six-month
stay. He did not leave when the visa expired. In Decem-
ber 2000 his wife and three children arrived, also holding
visitors' visas. They did not leave either. Jiménez sought
asylum in 2002 for himself and his family. There is, how-
ever, a one-year deadline for requesting asylum, see
8 U.S.C. §1158(a)(2), and Jiménez's application was filed

almost three years late. Immigration officials have the authority to allow untimely claims if the delay is justi-fied by changed circumstances, see §1158(a)(2)(D), 8 C.F.R. §1208.4(a), but the decision whether a change has occurred is committed to agency discretion. 8 U.S.C. §1158(a)(3).

An immigration judge concluded that Jiménez had not established "the existence of changed circumstances which materially affect the applicant's eligibility for asylum", §1158(a)(2)(D). He argued that he fears the Revolutionary Armed Forces of Colombia (FARC), an insurgent group that threatened him with death after he opposed its operations. But because he told the immigra-tion judge that he had left Colombia in 1998 precisely because of the FARC's threats, the IJ found that he should have applied for asylum immediately on arriving in the United States. Jiménez testified that he delayed because he expected the domestic situation in Colombia to improve, but that it had instead (in his view) become worse. The IJ did not see this as an adequate justification, both because conditions in Colombia had not changed materially and because hoping for improvement does not justify delay in filing.

A possibility that Jiménez does not mention—that he waited until his family had reached the United States, lest his application embarrass the family's claim to be tourists who planned to return to Colombia within six months—cannot be ruled out, but it would not justify an exception to the one-year time limit. Jiménez also main-tained that he had not understood the asylum process until recently, but the IJ did not see this as the sort of "extraordinary circumstances" that permits a late filing under §1158(a)(2)(D) even when country conditions have

not changed materially. The IJ did, however, grant the family's request for withholding of removal on the ground that they would be in danger from the FARC should they return to Colombia while that nation's civil unrest continues.

Jiménez and his family appealed to the Board of Immigration Appeals, which endorsed the IJ's decision. Next they filed a petition for review in this court, precipitating a series of jurisdictional questions.

The first is whether the BIA's decision is "final," a condition of our jurisdiction under 8 U.S.C. §1252(a)(1). After resolving the Jiménez family's appeal, the Board remanded to the IJ under 8 C.F.R. §1003.1(d)(6) for a background check to ensure eligibility for withholding of removal. The Attorney General contends that this remand makes the BIA's order non-final—and he adds that, because the family did not appeal to the Board from the IJ's order in September 2007 confirming its entitlement to withholding of removal, judicial review is now impossible.

Yet how could the Jiménez family appeal to the Board from a favorable decision? (Recall that the only question the Board instructed the IJ to consider was whether the family remained eligible for withholding of removal.) The Attorney General's position leaves the aliens trapped: They can't seek judicial review of the asylum question because the Board's order is non-final, and they can't seek review of the IJ's decision because it is favorable. This situation is common in administrative law when a court (or appellate body of an agency) remands for consideration of a question different from the one on which judicial review is sought. The normal rule is that the original decision on the only question open to judicial review is

"final." See, e.g., *Forney v. Apfel*, 524 U.S. 266 (1998) (collecting authority). This is an approach that we have applied to immigration proceedings. Take, for example, *Zahren v. Gonzales*, 487 F.3d 1039 (7th Cir. 2007), in which the Board affirmed the IJ's removal order but remanded so that the IJ could decide whether to allow the aliens the privilege of voluntary departure. We concluded that this is a "final" order because the only question within the judicial ken—whether the record supported an order of removal—had been conclusively resolved. Everything that remained was a matter of administrative discretion. Just so here.

Section 1252(a)(1) specifies, as the reviewable action, not simply a "final" order of the Board, but a "final order *of removal*" (emphasis added). We asked the parties whether such an order exists—whether there is even a controversy within the scope of Article III. After all, the IJ allowed the aliens to remain in the United States by granting withholding of removal. How is an order providing that the aliens will *not* be removed a "final order of removal"? And what difference does it make whether the reason why the aliens remain in the United States is a grant of asylum or a decision by the agency to withhold removal? Either way the aliens remain, which is their goal. Where's the controversy? The judicial branch reviews an agency's decision adverse to an applicant, not an agency's statement of reasons for a decision favorable to an applicant.

There is a statutory answer to the question "how can a decision to withhold removal be a final order of removal?" A definitional clause in the statute says that an "order of deportation" (which since 1996 is the same thing as an "order of removal") means an order of the agency

"concluding that the alien is deportable *or* ordering deportation." 8 U.S.C. §1101(a)(47)(A) (emphasis added). The IJ and Board did not "order" the Jiménez family's removal, but they did find the family's members "remov-*able*". The family conceded as much: they are citizens of Colombia and lack visas authorizing continuing presence in the United States. Any order withholding removal supposes that the alien is "removable". See *Guevara v. Gonzales*, 472 F.3d 972, 976 (7th Cir. 2007); *Blagaic v. Flagg*, 304 F.2d 623 (7th Cir. 1962). The IJ could have avoided any uncertainty by entering a formal order of removal and then staying its effect by granting the petition to withhold removal, but the absence of this paperwork is not dispositive.

As for the Article III issue: there are enough differences between asylum and withholding of removal to yield a live controversy. One difference is that holders of asylum are entitled to remain in the United States until conditions in their home countries improve or the risk of persecution otherwise declines. Withholding of removal, by contrast, confers not a privilege to remain in the United States but only an immunity against removal to a particular country. See 8 C.F.R. §1208.16(f). An alien still may be removed to any other nation on the list in 8 U.S.C. §1231(b) that is willing to accept him. Another difference is that persons who have been granted asylum may leave the United States and return, while withholding of removal does not permit reentry into this country. Any member of the Jiménez family who leaves the United States will not be allowed back. See 8 C.F.R. §1241.7. Yet another difference is that aliens in asylum status eventually may become permanent residents. 8 C.F.R. §209.2. Withholding of removal confers no such opportu-

nity. There are more differences, but these three are enough to show that asylum status is more valuable to an alien than withholding of removal, so a real controversy is presented by the Jiménez family's petition for judicial review.

This is as far as we can go, however, because the IJ and BIA enforced against Jiménez the one-year limit on applying for asylum. Section 1158(a)(2) allows the agency to accept untimely applications under certain circumstances, but "[n]o court shall have jurisdiction to review any determination of the [agency] under paragraph (2)." 8 U.S.C. §1158(a)(3). To this exception §1252(a)(2)(D) adds a proviso: "constitutional claims or questions of law" remain reviewable. Jiménez and his family contend that the IJ and BIA erred on a question of law. But both the Board and the IJ stated with precision the rules for exceptions to the one-year deadline. The IJ found that Jiménez had deliberately refrained from making a timely application for asylum, and that any change in conditions in Colombia since then is not material. The first is a conclusion of fact and the second is an application of law to fact; neither rests on or reflects a legal mistake.

Petitioners' position boils down to the contention that every error an agency can make is in the end one of "law"—if, for example, it makes a decision unsupported by substantial evidence, that's an error of law because the law requires agencies to found their decisions on substantial evidence. If this is so, however, then §1158(a)(3) and similar provisions, such as §1252(a)(2)(A), (B), and (C), have been erased from the statute books. They never have any force; the proviso in subsection (D) covers every case. That can't be right—courts don't read one statute to

obliterate others, unless there is no way to make them co-exist—and we have held that it is not right, for §1158(a)(3) and §1252(a)(2)(D) in particular. We have dismissed petitions because of §1158(a)(3), see, e.g., *Kaharudin v. Gonzales*, 500 F.3d 619 (7th Cir. 2007); *Nigussie v. Ashcroft*, 383 F.3d 531 (7th Cir. 2004); *Vladimirova v. Ashcroft*, 377 F.3d 690, 695 (7th Cir. 2004), and have held that the proviso in §1252(a)(2)(D) is limited to "pure" questions of law—situations in which a case comes out one way if the Constitution or statute means one thing, and the other way if it means something different. See *Cevilla v. Gonzales*, 446 F.3d 658 (7th Cir. 2006); *Leguizamo-Medina v. Gonzales*, 493 F.3d 772 (7th Cir. 2007).

The Jiménez family asks us to reconsider *Cevilla* in light of later decisions in other circuits. The family relies particularly on *Xiao Ji Chen v. Department of Justice*, 471 F.3d 315, 329-30 (2d Cir. 2006), and *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007), which it says allow a court of appeals to review the agency's application to a given situation of a law whose meaning is not contested. The aliens also suggested that the Supreme Court might say something in *Ali v. Achim*, 468 F.3d 462 (7th Cir. 2006), cert. granted, 128 S. Ct. 29 (2007), that would bear on this subject. The writ of certiorari in *Ali* has been dismissed on the parties' stipulation, however, so there is no need to wait further. Nor need we spend time on *Xiao Ji Chen*; the second circuit has since demonstrated that it agrees with *Cevilla*, any dicta in *Xiao Ji Chen* to the contrary notwithstanding. See *Gui Yin Liu v. INS*, 508 F.3d 716 (2d Cir. 2007). That leaves only the ninth circuit's opinion in *Ramadan*.

The panel in *Ramadan* held that §1252(a)(2)(D) authorizes judicial review of all "mixed questions of law and fact",

including all applications of law to fact. Only pure findings of fact are outside the scope of subsection (D), the panel concluded. Because no administrative case can be decided without applying some law to some facts, that understanding of §1252(a)(2)(D) vitiates all clauses in the statute, including §1158(a)(3), that limit judicial review of particular classes of decisions. Here, for example, the IJ had to decide whether any change of conditions in Colombia is "material," the sort of question that the Supreme Court treats as one of fact. See *United States v. Gaudin*, 515 U.S. 506 (1995). Cf. *Pullman-Standard v. Swint*, 456 U.S. 273 (1982); *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986). The panel in *Ramadan* conceded that §1252(a)(2)(D) does not say that "mixed" or "ultimate" questions are reviewable—and, as we noted in *Cevilla*, the legislative history of §1252(a)(2)(D) is incompatible with extending that proviso beyond pure questions of law—but adopted its interpretation to avoid any need to consider constitutional objections to §1252(a)(2)(D).

It is hard to appreciate what those objections might be; the Constitution itself allows Congress to create exceptions to the jurisdiction of the federal courts. Provisions foreclosing judicial review of particular administrative decisions are common. The most famous such exclusion is in the Administrative Procedure Act of 1946, 5 U.S.C. §701(a)(2) (decisions "committed to agency discretion by law" are not judicially reviewable), and to our knowledge no serious argument has ever been made that §701(a)(2) is unconstitutional. The Supreme Court has applied it repeatedly without a single Justice expressing doubt about its validity (though there is often debate about whether a given question has been so "committed"). See, e.g., *Lincoln v. Vigil*, 508 U.S. 182 (1993); *Heckler v. Chaney*, 470 U.S. 821 (1985). Given the preservation of legal and

constitutional claims in §1252(a)(2)(D), the preclusive effect of §1158(a)(3) is less sweeping than that of the APA. The use that the panel in *Ramadan* was able to make of the "canon of avoiding constitutional questions" shows why many thoughtful people think the canon a bad one—for constitutional questions lurk everywhere, and judges who seek to avoid them can end up rewriting statutes that would be deemed perfectly valid if the question were faced and resolved. See Henry J. Friendly, *Benchmarks* 210 (1967); William K. Kelley, *Avoiding Constitutional Questions as a Three-Branch Problem*, 86 Cornell L. Rev. 831 (2001).

Nine judges dissented from the denial of rehearing en banc in *Ramadan*. 504 F.3d 973 (2007). Judge O'Scannlain's opinion for this group covers all that need be said about the panel's decision. He points out not only some of the problems that we have mentioned, but also the fact that the ninth circuit stands alone: at least eight circuits read §1252(a)(2)(D) as limited to pure questions of law. (Judge O'Scannlain counted only seven; he missed our opinions in *Cevilla* and *Leguizamo-Medina*.) The opinion for the three-judge panel in *Ramadan* does not persuade us that *Cevilla* should be overruled; instead Judge O'Scannlain's opinion for nine judges persuades us that *Cevilla* should not be disturbed.

Section 1158(a)(3) says that we lack jurisdiction. Section 1252(a)(2)(D) does not restore jurisdiction when, as in this case, the governing rules of law are undisputed. The aliens' remaining arguments have been considered but do not require discussion. The petition for review is dismissed for want of jurisdiction.

---