In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 13-2405

ALVARO ADAME,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent.*

---

On Petition for Review of a Final Order
of the Board of Immigration Appeals.
No. A089 856 290

---

ARGUED APRIL 14, 2014 — DECIDED AUGUST 12, 2014

---

Before WOOD, *Chief Judge*, and POSNER and FLAUM, *Circuit Judges*.

WOOD, *Chief Judge*. Petitioner Alvaro Adame was placed in removal proceedings in 2009. He applied for cancellation of removal, but an immigration judge (IJ) rejected his application in 2011 and ordered him removed. The Board of Immigration Appeals (Board) affirmed. Adame now petitions for review of the Board's decision, asserting that we have ju-

risdiction under 8 U.S.C. § 1252(a)(2)(D). The central issue before us is whether that is true.

Adame is a citizen and native of Mexico. The exact date of his entry to the United States is not clear. At the latest it was in 2001, as demonstrated by a traffic ticket he received in Kansas that year. Adame testified before the IJ that he entered the country in 1997, but he had no other evidentiary support for that statement. Either way, he entered the country without inspection and lived in the United States without incident (at least from an immigration perspective) until 2009, when the Department of Homeland Security issued him a Notice to Appear. The Department had discovered him because of an arrest, which is the subject of a baffling but ultimately inconsequential uncertainty: though he apparently was arrested for the manufacture and delivery of cocaine, his record shows that he pleaded guilty to "drinking in a park."

Adame conceded removability as a noncitizen present without inspection. See 8 U.S.C. § 1182(a)(6)(A)(i). With the help of counsel, however, he prepared an application for cancellation of removal. After two continuances, the IJ denied his application on October 6, 2011, and ordered him removed to Mexico.

Cancellation of removal is a form of discretionary relief available to certain nonpermanent residents. In order to be eligible, the applicant must meet three statutory criteria. First, she must have been physically present in the United States for at least ten consecutive years immediately preceding the date of her application. Second, she must have been a person of "good moral character" during that period. Finally, she must show that her removal would cause "exception-

al and extremely unusual hardship" to a U.S.-citizen or permanent-resident spouse, parent, or child. 8 U.S.C. § 1229b(b). The petitioner bears the burden of establishing each of these criteria.

The IJ found that Adame had struck out on all three. He could not show the necessary ten years' continuous residence, the IJ reasoned, because the earliest documentary evidence of his presence in the United States was the 2001 traffic ticket, issued only eight years before he submitted his application in 2009. In so ruling, the IJ chose not to credit Adame's testimony that he entered in 1997. He found the testimony unreliable because of inconsistencies in Adame's testimony on other matters such as his arrest record.

The IJ added that Adame could not establish the required good moral character because his criminal record reflected multiple minor offenses, most related to drinking (*e.g.*, driving while intoxicated, loitering in a bar, public intoxication). Finally, Adame failed to prove that his U.S.-citizen children would suffer "exceptional and extremely unusual hardship" beyond that experienced by all children whose parent is removed from the country, because there was no evidence that he would be unable to support the children in Mexico or to obtain certain necessary medications for them.

The Board affirmed the order of removal and the denial of cancellation of removal. Because a failure to show any one of the three requirements was enough to deny relief, the Board opted to restrict its discussion to the continuous-residence issue. On that point, it observed that "the testimonial evidence alone was insufficient," and it rejected Adame's argument that the IJ should have warned him earlier that he would need to present documentary evidence to

support his contention that he entered in 1997. The Board also noted that the IJ told Adame at his first hearing that he would have to "present proof" of his residence and that "just saying you've been here" would not suffice. Accordingly, the Board dismissed Adame's appeal, and Adame filed a timely petition for review in this court.

As a general matter, the courts of appeals lack jurisdiction to review the denial of discretionary relief in immigration proceedings. Under 8 U.S.C. § 1252(a)(2)(B), "no court shall have jurisdiction to review … any judgment regarding the granting of relief under [§ 1229b] … [or] any other decision or action of the Attorney General … the authority for which is specified under this subchapter to be in the discretion of the Attorney General … ." The only (but important) exception to this rule is if the petition for review presents a constitutional claim or question of law. See *id.* § 1252(a)(2)(D). Cognizant of this limitation, Adame styles his petition as raising a due process claim: he argues that the IJ and then the Board violated his Fifth Amendment right to due process by determining that his testimony lacked credibility and by requiring him to submit extra documentation to prove his ten years of continuous residence. Alternatively, Adame argues that the IJ should have granted a continuance to allow him to collect this documentation.

Like any party raising a due process claim, an immigration petitioner must have a constitutionally protected liberty (or property) interest in order for some process to be "due" under the Fifth Amendment. See *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260 (1987). While a noncitizen has a protected liberty interest in remaining in the United States, that interest does not encompass a right to favorable decisions

that would allow the petitioner to seek discretionary relief. *Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006). Even if the IJ were flat-out wrong and Adame had resided in the United States for ten continuous years before he received his Notice to Appear, the question remains whether a court of appeals would be authorized to correct that error. The statute, after all, does not say that jurisdiction exists over constitutional questions, legal issues, and egregious mistakes of fact. Moreover, even if there were some legal hook that would permit a petitioner like Adame to obtain review of the residence determination, correction of any error in that finding would not be enough to guarantee that cancellation of removal would be granted. It would merely allow him to move to steps two and three—that is, to present evidence on good moral character and extremely unusual hardship to a U.S.-citizen relative.

Even a successful showing of those points would not be enough on its own. It would simply authorize the IJ to use his discretion over cancellation of removal in Adame's favor. As the statute puts it, after the three criteria are established, the IJ "*may* cancel removal"; it does not say that the judge must do so. 8 U.S.C. § 1229b(b)(1) (emphasis added). A noncitizen's "right to due process does not extend to proceedings that provide only … discretionary relief." *Cevilla*, 446 F.3d at 662 (quoting *Hamdan v. Gonzales*, 425 F.3d 1051, 1060–61 (7th Cir. 2005)) (internal quotation mark omitted). As cancellation proceedings provide only discretionary relief, it follows that the IJ's decision to deny cancellation of removal did not violate any rights protected by the Fifth Amendment's Due Process clause. We may resolve the legal issue presented by this part of the petition, because Adame's

argument is not so insubstantial that it fails to engage our jurisdiction under § 1252(a)(2)(D).

In the alternative, Adame argues that the IJ incorrectly applied the law to the facts by requiring additional evidence that he had been in the United States for ten years of continuous residence when that evidence was not reasonably available. Adame urges that the IJ erred by calling for documentary evidence to supplement his testimony without considering whether that evidence could reasonably be obtained. This, he says, is another question of law over which we may take jurisdiction, and he points to the Eighth Circuit's decision in *Sanchez-Velasco v. Holder*, 593 F.3d 733 (8th Cir. 2010), as one case that adopts the approach he describes.

We acknowledge that not only the Eighth Circuit, but also the Fifth, Sixth, and Ninth Circuits have taken the position that the jurisdiction to review questions of law referred to in 8 U.S.C. § 1252(a)(2)(D) extends to "questions involving the application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law." *Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007); see also *Morales-Flores v. Holder*, 328 F. App'x 987, 989 (6th Cir. 2009) (citing *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005)); *Pinos-Gonzalez v. Mukasey*, 519 F.3d 436, 439 (8th Cir. 2008); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215 (5th Cir. 2003). These courts evaluate such claims using the standard of review provided by the Administrative Procedure Act, 5 U.S.C. § 706. See, *e.g.*, *Santana-Albarran*, 393 F.3d at 705 (reviewing continuous-presence determination under substantial-evidence test).

We might add the Second Circuit to that list. Though it declined to determine the "precise outer limits" of what con-

stitutes a "question of law" in *Chen v. United States Department of Justice*, the Second Circuit too allows some consideration of "mixed" questions of law and fact, at least to the extent that similar challenges may be brought on habeas corpus review of executive detentions. 471 F.3d 315, 326–27 (2d Cir. 2006). This allows a court to consider claims concerning errors in both the interpretation and application of statutes. *Id.* at 327 (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001)). The Second Circuit arrived at this position after vacating its earlier opinion in *Chen*, in which it had held that only constitutional and statutory construction questions fell within the court's jurisdiction. See *Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 153–54 (2d Cir. 2006) *vacated by Chen*, 471 F.3d 315 (2d Cir. 2006). That said, the Second Circuit has made an effort not to allow the "mixed-question" exception overwhelm the statutory rule. It thus holds that disputes about the IJ's fact-finding dressed up as legal questions and general challenges about an IJ's alleged failure to take certain evidence into account fall outside what a court may consider. See *Liu v. I.N.S.*, 508 F.3d 716, 720–21 (2d Cir. 2007). The First, Third, and Fourth Circuits have followed *Chen*, permitting review of the threshold question whether the correct legal standard was used, but finding no jurisdiction when the so-called legal question is simply a means of challenging factual conclusions. See *Vargas v. Attorney General*, 543 F. App'x 162, 163–64 (3d Cir. 2013) (per curiam); *Amedome v. Holder*, 524 F. App'x 936, 937–38 (4th Cir. 2013); *Ayeni v. Holder*, 617 F.3d 67, 72–73 (1st Cir. 2010).

This court's position has been a strict one. We have adhered for years to the rule that § 1252(a)(2)(B) excludes from our jurisdiction challenges to an IJ's application of the law to the facts of a case when the grounds for relief sought are dis-

cretionary, and that in such a case the subpart (B) exclusion is unaffected by § 1252(a)(2)(D). *Cevilla,* 446 F.3d at 661. We have understood the review of the application of law to facts as something different from review of so-called "pure" questions of law. Even though *Cevilla* relied heavily on the Second Circuit's now-vacated initial opinion in *Chen* for its reasoning, we have reconsidered and reaffirmed our position on this point. See *Viracacha v. Mukasey*, 518 F.3d 511, 515–16 (7th Cir. 2008). We thus limit our review to constitutional claims and questions of statutory construction. See *id.*; *Cuellar Lopez v. Gonzales*, 427 F.3d 492, 493 (7th Cir. 2005) (explaining that interpretation of term "continuous physical presence" can be reviewed because it presents a legal question of statutory construction). Under this court's understanding of the statutory scheme, Adame's challenge to the IJ's demand for additional evidence falls outside of our authority. The conflict in the circuits on this point is a serious one, but it has stood for some time. Indeed, the government candidly informed us at oral argument that it would not press the same jurisdictional defense in other circuits.

This disposes of most of Adame's petition. We comment briefly on a few additional arguments he raises. First, he faults the Board for offering no new or additional analysis in its order affirming the IJ's conclusion. But the Board is under no obligation to provide "extra" analysis; if the IJ's analysis is sufficient to sustain its conclusion, the Board is entitled to affirm on that basis.

Second, Adame challenges the IJ's decisions about his moral character and his family's potential hardship. We do not have jurisdiction to review those decisions for the same reasons we cannot review the sufficiency of the evidence on

the duration of his residence: they lead only to discretionary relief, and they involve only applications of law to facts.

Third, Adame contends that the IJ failed to follow the procedural requirements for considering an application for cancellation of removal. While no particular statute sets out explicitly what those procedures are, a noncitizen "applying for cancellation of removal has the same statutory process protections as an alien involved in removal proceedings … ." *Delgado v. Holder*, 674 F.3d 759, 766 (7th Cir. 2012); *cf. Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) (explaining that statutorily required procedures assure compliance with constitutional due process requirements, and that a petitioner may have a legal claim when she can show statutory procedural shortfalls). But he has not told us enough about his complaint to allow us to address this point. Instead, he merely refers to 8 U.S.C. § 1229a without explaining how its requirements were violated. It is true that 8 U.S.C. § 1229a(c)(4)(B) directs the IJ to weigh credible testimony along with other evidence in the record, but we do not see where that gets Adame, since the IJ found his testimony *not* credible. Section 1229a(c)(4)(C) directs the IJ to base his decision on the totality of the circumstances, and that is what he did.

Last, Adame argues that the IJ erred by refusing to grant him a continuance to seek additional documentary evidence rather than ordering him removed. We may review an allegation that the immigration courts failed to follow their own precedent faithfully, because this presents a question of law. *Ward v. Holder*, 632 F.3d 395, 397 (7th Cir. 2011). The Board's rule on when continuances should be granted comes from *Matter of Hashmi*, 24 I. & N. Dec. 785 (B.I.A. 2009), in which

the Board laid out what must be shown before a continuance may be granted. Two of the most salient requirements for our purposes are that the petitioner must be unable to procure the necessary evidence despite a diligent effort, and that the evidence would be significantly favorable to him. *Id.* at 788. Under this standard, we conclude that the IJ's denial of a continuance was within his discretion. Adame and his counsel knew for two years that he would have to prove ten years' residence. Adame's complaint that it was difficult to obtain evidence from his alleged employer or the relatives he says he lived with at the time rings hollow. First, two years is a substantial period of time to gather the evidence, and second, there is nothing in the record to show that Adame made a diligent effort (or any effort) to pursue these leads.

The petition for review is DISMISSED to the extent we lack jurisdiction and DENIED as to the remainder.