In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2504

MIGUEL PEREZ-FUENTES,

*Petitioner,*

*v.*

LORETTA E. LYNCH, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A200-140-987

ARGUED SEPTEMBER 20, 2016 — DECIDED NOVEMBER 22, 2016

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner Miguel Perez-Fuentes, a native and citizen of Mexico, seeks review of the Board of Immigration Appeals' decision affirming the denial of his application for cancellation of removal. *See* 8 U.S.C. § 1229b(b). The Board affirmed the denial based on the Immigration Judge's alternate determination that Perez-Fuentes did not establish the requisite hardship for cancellation. *See* 8 U.S.C.

§ 1229b(b)(1)(D). Perez-Fuentes challenges several aspects of his hearing. He contends that the IJ improperly excluded evidence and failed to develop the record as required by 8 U.S.C. § 1229a(b)(1) and 8 C.F.R. § 1240.32(b). We dismiss Perez-Fuentes' petition for review, in part for lack of jurisdiction, and deny the remainder of the petition.

## I. BACKGROUND

Perez-Fuentes entered the United States from Mexico without inspection; the date of his entry is not clear. Perez-Fuentes came to the attention of the Department of Homeland Security after several arrests. On July 19, 2011, DHS served Perez-Fuentes with a Notice to Appear, charging that he was removable for being present in the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i).

On September 13, 2011, Perez-Fuentes proceeded *pro se*, but with the aid of an interpreter, at the first hearing. He testified that he is a parent of a daughter, Esmeralda, who is a United States citizen. Further, he testified that he first entered the United States in 1995 for a period of time, and returned to the United States after a departure sometime in 1998. After he told the IJ about an arrest, he was instructed to provide a list of his arrests and the dispositions, and the court records. The IJ provided Perez-Fuentes with an application for cancellation of removal and informed him of the requirements.

On November 22, 2011, Perez-Fuentes conceded removability and filed an application for cancellation of removal. *See* 8 U.S.C. § 1229b(b). Cancellation of removal is a discretionary form of relief available to certain nonpermanent residents. To qualify, an applicant must meet four statutory criteria: he must

establish continuous physical presence for ten years immediately preceding the date of his application; have "good moral character" during that period; show he was not convicted of certain offenses; and, prove that his removal would "result in exceptional and extremely unusual hardship" to a qualifying relative. 8 U.S.C. § 1229b(b)(1). The applicant has the burden of establishing each of these criteria. *Adame v. Holder*, 762 F.3d 667, 669 (7th Cir. 2014). Finally, even if the applicant satisfies these conditions, the IJ retains discretion to grant or deny the application. 8 U.S.C. § 1229b(b)(1); *see also Adame*, 762 F.3d at 670–71 ("[T]he IJ '*may* cancel removal'; it does not say that the judge must do so.").

After four continuances over an 18-month period, the IJ held the final hearing on the merits of Perez-Fuentes' application on January 28, 2013. Perez-Fuentes testified in support of his application. Among other questions, the IJ asked Perez-Fuentes, "Okay, well, what hardships do you feel your daughter would face if, if you had to leave the United States?" Perez-Fuentes testified that he financially supported his daughter and she would need money for clothes and food. He also testified that his daughter was in good health. The IJ asked Perez-Fuentes about whether his girlfriend, Raquel Ochoa—an undocumented non-citizen and the mother of Perez-Fuentes' daughter—would move to Mexico with him and about her work history. After several other questions regarding his daughter and Ochoa, the IJ inquired further: "Well, do you think your child would face any hardships other than financial hardships if you had to leave?" Perez-Fuentes answered, "Well, yes, because she's still very little, but even being little she's very close to me."

Additionally, Perez-Fuentes had two witnesses testify and provided various documents, including tax returns and seven untranslated written statements. Perez-Fuentes called Blanca Ruiz to testify as a character witness on his behalf. Ruiz is the wife of Miguel Ruiz, a former employer of Perez-Fuentes.

He also called Ochoa to testify on his behalf. The IJ asked Ochoa several questions, including questions about the number of children she had with Perez-Fuentes, the age of their daughter, whether their daughter was in good health, and whether she would stay with him if he was required to depart.

After Ruiz and Ochoa's testimony, the IJ asked Perez-Fuentes whether he had any other witnesses. Perez-Fuentes said that he did, "but not anybody that … kn[ew] [him] as well as [Ruiz and Ochoa]."

At the conclusion of the hearing, the IJ denied Perez-Fuentes' application, and ordered him removed to Mexico. The IJ found that Perez-Fuentes "failed to meet any of the requirements necessary for cancellation of removal," and that he did not merit cancellation of removal as a matter of discretion. As to the physical presence requirement, the IJ noted that Perez-Fuentes testified that he arrived in 1997, but that at a previous hearing he stated that he returned to Mexico in 1998. The IJ concluded that Perez-Fuentes failed to present documentary evidence to support his claim that he worked continuously in the United States.

The IJ also found that Perez-Fuentes did not establish the good moral character requirement. The IJ noted several arrests, including a recent arrest for domestic battery; his third arrest for that offense. The IJ found that Perez-Fuentes and Ochoa's

conflicting testimony surrounding the recent offense suggested he was not telling the truth. The IJ believed that Perez-Fuentes underreported his income for tax purposes, especially in light of his inability to explain how he recently purchased a home for $100,000 in cash, while only reporting a net income of $7,000.

In addition, the IJ found that, even assuming that Perez-Fuentes had met the continuous physical presence and good moral character requirements, he had failed to prove that his removal would result in "exceptional and extremely unusual hardship" to his daughter, Esmeralda. The IJ found that Perez-Fuentes presented "virtually no evidence" showing what hardship his daughter would face other than "separation hardship and financial hardship" if Perez-Fuentes was required to depart.

On June 9, 2014, the Board affirmed the order of removal and denial of cancellation of removal. The Board concluded that there were no due process violations, that the IJ fully developed the record, and that Perez-Fuentes had a full opportunity to present his case. The Board affirmed the IJ's alternate determination that Perez-Fuentes had not established that his removal to Mexico would result in "exceptional and extremely unusual hardship" to his daughter. *See* 8 U.S.C. § 1229b(b)(1)(D).[1] The Board noted that Perez-Fuentes did not assert that his daughter has any serious health issues or special needs in school, and that she lives with Ochoa.

---

[1] Perez-Fuentes retained counsel on his appeal to the Board, as well as his appeal to this Court.

The Board also noted that Ochoa was in good health and that Perez-Fuentes was healthy and that there is no reason why he could not work in Mexico and send money back to his daughter and Ochoa. Lastly, the Board found that the IJ considered all of the evidence individually and cumulatively, and affirmed that, in the aggregate, these hardships do not reach the high threshold necessary to demonstrate eligibility for cancellation of removal. Accordingly, the Board dismissed the appeal. Perez-Fuentes filed a timely petition for review in this Court.

## II. DISCUSSION

Generally, we lack jurisdiction to review denials of discretionary relief in immigration proceedings, including cancellation of removal. *See* 8 U.S.C. § 1252(a)(2)(B); *Adame*, 762 F.3d at 670. But, under 8 U.S.C. § 1252(a)(2)(D), we retain jurisdiction to review constitutional claims and questions of law raised in a petition for review. *Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012).

Perez-Fuentes claims that the IJ failed to follow statutory and regulatory requirements while conducting Perez-Fuentes' removal hearing. More specifically, he contends that he was prevented from receiving a full and fair hearing because the "IJ arbitrarily rejected evidence, failed to use proper legal standards, and failed to fully develop the record as required by 8 U.S.C. § 1229a(b)(1) and 8 C.F.R. § 1240.32(b)." Since "[t]he procedural sufficiency of an immigration hearing is a legal question," *Boyanivskyy v. Gonzales*, 450 F.3d 286, 291 (7th Cir. 2006), some of Perez-Fuentes' challenges are reviewable.

### A. Developing the Record

Perez-Fuentes contends that he was denied a full and fair hearing because the IJ breached his duty to develop the record by asking Perez-Fuentes and Ochoa only a few questions about the potential hardship his daughter, Esmeralda, would face. IJs are authorized to "interrogate, examine, and cross-examine the alien and any witnesses" during removal proceedings. 8 U.S.C. § 1229a(b)(1). "The immigration judge shall receive and adduce material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing." 8 C.F.R. § 1240.32(b).

Here, the record shows that the IJ elicited testimony from Perez-Fuentes and Ochoa concerning the potential hardship Esmeralda would face. For example, the IJ asked, "Okay, well, what hardships do you feel your daughter would face if, if you had to leave the United States?" In response, Perez-Fuentes testified that his daughter relies on him to provide her food and clothes. After several related follow-up questions, the IJ asked Perez-Fuentes a question intended to elicit testimony concerning other potential hardships: "Well, do you think your child would face any hardships other than financial hardships if you had to leave?" Perez-Fuentes answered, "Well, yes, because she's still very little, but even being little she's very close to me."

Based on the record, Perez-Fuentes cannot contend that the IJ failed to develop the record by not asking more questions. His answers essentially conveyed to the IJ that the potential hardship Esmeralda would face is not "substantially different from, or beyond, that which would be normally expected from

the deportation of an alien with close family members in the United States." *Cruz-Moyaho v. Holder*, 703 F.3d 991, 995 (7th Cir. 2012) (quoting *In re Monreal*, 23 I. & N. Dec. 56, 65 (BIA 2001)) (alterations omitted).

Perez-Fuentes has not shown that he was prejudiced. Although Perez-Fuentes lists questions that the IJ could have asked, he has not provided us with answers to those questions or any other concrete information that might have affected the outcome of the proceeding. *See El-Gazawy v. Holder*, 690 F.3d 852, 860 (7th Cir. 2012) ("[A]pplicant's failure to allege excluded testimony that would potentially affect outcome of hearing was fatal to due process claim"). Further, the IJ concluded that had Perez-Fuentes established all of the requirements for cancellation of removal, the IJ could have denied the application as a matter of discretion.

We do not believe that the record before us supports a conclusion that the IJ violated any statute or regulation in regards to the manner in which the IJ elicited testimony concerning the potential hardships Esmeralda would face.

## B. Exclusion of Evidence

Perez-Fuentes argues that the IJ improperly excluded evidence by: (1) failing to call two of Perez-Fuentes' witnesses; and, (2) ignoring seven untranslated statements. Perez-Fuentes contends that he was prejudiced because the excluded evidence had the potential to affect the outcome of the proceeding. "An immigration judge has the authority to narrow the focus of a hearing and exclude irrelevant evidence, but he may not 'bar complete chunks of oral testimony that would support the applicant's claim.'" *Delgado*, 674 F.3d at 768 (quoting

*Barradas v. Holder*, 582 F.3d 759, 766 (7th Cir. 2009)). If the excluded evidence is central to the petitioner's case in such a way that it would change the outcome of the hearing, then this Court must find that the petitioner did not have a meaningful opportunity to be heard. *Id.*

### 1. Two Witnesses

We may review a final order of removal only if the non-citizen "has exhausted all administrative remedies available to the [non-citizen] as of right." 8 U.S.C. § 1252(d)(1). Some failure to exhaust claims may be "overlooked," but when a non-citizen's claim is "based on a procedural failing that the Board could have remedied, thereby obviating the constitutional claim, then the failure to exhaust will not be excused." *Ghaffar v. Mukasey*, 551 F.3d 651, 655 (7th Cir. 2008). "The duty to exhaust includes the obligation to first present to the [Board] any argument against the removal order as to which the Board is empowered to grant the alien meaningful relief." *Id.*

Here, Perez-Fuentes failed to exhaust his administrative remedies as to the argument that the IJ improperly excluded two witnesses. We acknowledge that Perez-Fuentes proceeded *pro se* before the IJ, but he was represented by counsel on his appeal to the Board. Perez-Fuentes' brief to the Board neither mentions the two witnesses, nor the exchange between the IJ and Perez-Fuentes in regards to whether he had any other witnesses. Perez-Fuentes failed to raise this specific argument before the Board, and therefore he did not exhaust his administrative remedies. Thus, he cannot raise it now for the first time.

8 U.S.C. § 1252; *see also Muratoski v. Holder*, 622 F.3d 824, 831 (7th Cir. 2010).[2]

## 2.  Seven Untranslated Written Statements

"A claim that the [Board] has completely ignored the evidence put forth by a petitioner is an allegation of legal error." *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008). Perez-Fuentes contends that the IJ ignored seven untranslated written statements because the letters were in Spanish and the IJ did not instruct the interpreter to read the letters into the record. Citing to *Niam v. Ashcroft*, 354 F.3d 652, 658–61 (7th Cir. 2004), Perez-Fuentes argues that the absence of any reference to the untranslated letters by either the IJ or the Board leaves a "yawning void."

In the oral decision, the IJ stated: "After careful consideration of the record in its entirety, I find the respondent has failed to meet any of the requirements necessary for cancellation of removal." Perez-Fuentes does not cite to any evidence in the record that indicates the IJ, in fact, ignored these letters; he indicates that the IJ only mentioned that the letters were untranslated. In addition, Perez-Fuentes argues that since the IJ did not reference the letters in his decision, it is evidence that

---

[2]  Even if Perez-Fuentes' argument was reviewable, it lacks merit. At the hearing, the IJ asked Perez-Fuentes whether he had any other witnesses. In response, Perez-Fuentes indicated that he did, "but not anybody that … kn[ew] [him] as well as [Ruiz and Ochoa]." In light of this response, Perez-Fuentes' claim that the IJ excluded the two witnesses is inaccurately characterized. The IJ did not refuse to hear additional testimony. Instead, the IJ gave Perez-Fuentes a reasonable opportunity to have the two witnesses testify.

the IJ did not consider the letters. However, the IJ is not required to mention each piece of evidence in its decision; the IJ need only *consider* the evidence. *See Boadi v. Holder*, 706 F.3d 854, 859 (7th Cir. 2013). But, under these circumstances, given the need for a translator and the proximity in time between the IJ's receipt of the letters and the IJ's oral decision, it is unlikely that the IJ could have considered the letters before rendering its decision.

Nevertheless, even if the IJ did not consider the seven untranslated written statements, Perez-Fuentes would have to establish that the ignored letters were central to his claims, and that the letters "may have had the potential to change the outcome of the hearing." *Delgado*, 674 F.3d at 768 (citing *Galicia v. Gonzales*, 422 F.3d 529, 540 (7th Cir. 2005)). Perez-Fuentes cites to specific details in the untranslated letters that are relevant to the continuous physical presence and good moral character requirements but does not cite to any specific details in the letters as having any information regarding the "exceptional and extremely unusual hardship" requirement. In fact, he does not argue that the letters contain any information regarding the hardship requirement. While the letters may have been central to some of his claims, they do not have the potential to "change the outcome of the hearing." As seen above, Perez-Fuentes' only challenge related to the hardship requirement failed.

## C.  Remaining Challenges

There is no need to further consider Perez-Fuentes' remaining challenges concerning the good moral character and continuous physical presence requirements. Perez-Fuentes

failed to establish the requisite hardship requirement for cancellation of removal. *See Aparicio-Brito v. Lynch*, 824 F.3d 674, 686 (7th Cir. 2016) (citation omitted).

### III.  CONCLUSION

For the foregoing reasons, we DISMISS Perez-Fuentes' petition for review in part for lack of jurisdiction and DENY the remainder of his petition for review.