In the

# United States Court of Appeals

### For the Seventh Circuit

―――――――――

No. 20-2193

SERGIO MEZA,

*Petitioner*,

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent*.

―――――――――

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A200-778-991

―――――――――

ARGUED FEBRUARY 25, 2021 — DECIDED JULY 20, 2021

―――――――――

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges*.

WOOD, *Circuit Judge*. Sergio Meza has resided in the United States without authorization since 1996. In 2012, the Department of Homeland Security commenced removal proceedings against him. Meza applied for discretionary cancellation of removal, but both an immigration judge and the Board of Immigration Appeals denied his application. In this petition for review, Meza asks us to reverse the Board's order,

arguing that the Board and the immigration judge committed various legal errors when they denied his application. Bearing in mind the applicable standards of review, however, we find no reversible error. We therefore deny the petition.

**I**

Meza, a native and citizen of Mexico, entered the United States without being formally admitted or paroled in 1996, when he was nine years old. He has remained in this country ever since. He is married to another Mexican native, with whom he has five U.S.-citizen children. Meza's parents also reside in the United States and have lawful permanent resident status.

Around 2012, the Department of Homeland Security became aware of Meza's unauthorized presence in the country and initiated removal proceedings against him under 8 U.S.C. § 1182(a)(6)(A)(i). Meza conceded his removability but applied for discretionary cancellation of removal under 8 U.S.C. § 1229b(b), arguing that his removal would create exceptional and extremely unusual hardship to his parents and his U.S.-citizen children.

On April 6, 2013, while his removal proceedings were pending, Meza was convicted of operating a motor vehicle while intoxicated. He was driving home after drinking at breakfast and collided with another vehicle. A breathalyzer test registered his blood alcohol content as 0.2, considerably above the legal limit. Fortunately, no one was injured, but the incident caused $5,000 in damage to the other car. Meza's motor-vehicle issues did not end there: In October 2015, Meza pleaded guilty to operating a vehicle without a license; in October 2016, he pleaded guilty to operating a motor vehicle

without insurance; and in December 2016, he pleaded guilty to failing to install an ignition interlock on his vehicle.

On July 17, 2018, Meza appeared before an immigration judge in connection with his application for cancellation of removal. At the hearing, Meza and his wife explained the circumstances surrounding each of his criminal offenses, testified about his character, and discussed the hardship that his family members would face if he were to be removed. One more unfavorable fact emerged at the hearing: Meza admitted that he had used a fabricated social security number to obtain employment between 2003 and 2015.

On August 15, 2018, the immigration judge issued a written decision finding Meza to be removable and denying his application for cancellation of removal. The judge determined that Meza was ineligible for cancellation because he had failed to fulfill two of the statutory criteria: (1) that he was a person of "good moral character" and (2) that qualifying relatives would suffer "exceptional and extremely unusual hardship" from his removal.

Meza appealed to the Board of Immigration Appeals, which issued an opinion affirming the immigration judge's order on June 10, 2020. The Board rested its decision solely on the ground that Meza had failed to demonstrate good moral character and did not address the immigration judge's hardship findings. Meza timely filed this petition for review shortly thereafter.

## II

### A

Before delving into the merits, we briefly explain why we have jurisdiction over Meza's petition. Section 242(a) of the Immigration and Nationality Act (INA) vests the federal courts with jurisdiction to review final orders directing the removal of an alien from the United States. 8 U.S.C. § 1252(a). The Act narrows the scope of judicial review, however, where an alien seeks judicial review of a denial of discretionary relief, such as an order that the alien is ineligible for cancellation of removal. *Id.* § 1252(a)(2)(B)(i) (providing that "no court shall have jurisdiction to review … any judgment regarding the granting of relief under section … 1229b"). In such situations, the Act limits the jurisdiction of the courts of appeals to "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D). As we read Meza's petition, we understand it to be raising questions of law—namely, that the immigration judge and the Board committed legal errors by disregarding a statutory requirement, ignoring evidence, and misinterpreting precedent. See *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008) ("A claim that the BIA has completely ignored evidence put forth by a petitioner is an allegation of legal error."); *Aparicio-Brito v. Lynch*, 824 F.3d 674, 686 (7th Cir. 2016) ("A legal question arises when the Board misinterprets a statute, … or its own precedent, [or] applies the wrong legal standard … ."). We are thus satisfied that our jurisdiction over his petition is secure.

### B

Because the Board affirmed the immigration judge with supplemental reasoning, we review the immigration judge's

order as modified by the Board. See *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 841 (7th Cir. 2016).

Meza's primary challenge concerns the determination that he is ineligible for cancellation of removal because he lacks good moral character. Under the INA, an alien who is not a permanent resident is eligible for cancellation of removal only if he demonstrates all of the following: (A) physical presence in the United States for a continuous period of at least ten years; (B) good moral character during that period; (C) no conviction of certain enumerated criminal offenses; and (D) exceptional and extremely unusual hardship to a spouse, parent, or child who is a citizen or lawful permanent resident should the alien be removed. 8 U.S.C. § 1229b(b)(1). In his petition for review, Meza contends that the immigration judge and the Board committed several legal errors on their way to finding that Meza lacked good moral character, including by examining conduct from outside the relevant ten-year period, ignoring relevant evidence, and contradicting precedent.

The first alleged legal error to which Meza points concerns the ten-year period for assessing good moral character. The Board has interpreted the ten-year period for establishing good moral character under section 1229b(b)(1) as covering the ten years immediately preceding the final decision of the immigration judge or the Board, whichever is then relevant. *In re Ortega Cabrera*, 23 I&N Dec. 793, 797 (BIA 2005). Thus, the beginning of the good-moral-character period for the immigration judge's August 2018 decision was August 2008. According to Meza, however, the immigration judge's good-moral-character analysis was legally flawed because she based it on conduct that occurred before 2008. This appears to have been the case: the immigration judge's opinion expressly

calls out Meza's "history of drug use" as partial support for her finding that he failed to demonstrate good moral character. This reference was erroneous, because the only evidence of drug use in the record dated from before 2008.

Meza's argument still founders, however, because the Board recognized the error and corrected it on appeal. Indeed, the Board's opinion takes great care to explain that it had "consider[ed] [Meza's] criminal history only for the past 10–year period" (which, by the time of the Board's decision, spanned 2010 to 2020). We find nothing in the Board's opinion to suggest, as Meza claims, that the Board's decision remained "tainted" by the immigration judge's original analysis, notwithstanding the correction. The Board concluded that the immigration judge's finding should be affirmed solely based on conduct during the preceding ten years. It reasonably viewed Meza's drunk driving offense, multiple vehicle-related traffic violations, and use of a fake social security card during that period as indicative of an absence of good moral character.

Meza's remaining arguments are equally unavailing. He claims that the immigration judge erroneously concluded that Meza "did not comply with the requirement to have an interlock device on his car at all times." Although this sounds more like a factual dispute than a legal one, Meza insists that a legal error occurred because (as he sees it) the immigration judge ignored his explanation for *why* he had been driving without an interlock device—*i.e.*, that at the time of the offense he was driving his wife's car, which did not have an interlock device, because his wife had gotten ill in the middle of a trip and could no longer drive. Meza pointed out that he had

otherwise complied with the requirement by installing the interlock on his personal vehicles, just not his wife's.

Meza's explanation is beside the point. As Meza himself admitted in the administrative proceedings, he was not permitted to operate *any* vehicle lacking an ignition interlock device, because of his prior drunk driving conviction. He violated that requirement when he drove his wife's vehicle, just as he would have had he been driving a rental car, or his next-door neighbor's car. The immigration judge's determination that Meza "did not comply with the requirement" was therefore correct; it does not suggest that either the immigration judge or the Board ignored Meza's explanation. Nor does the fact that the immigration judge said Meza violated the requirement to have a device in "his car" change our analysis—although the judge's language might have been more precise, in this context, "his car" clearly is shorthand for "the car that Meza was operating."

Next, Mesa suggests that the Board erred by treating his single drunk-driving offense as presumptive evidence of a lack of good moral character. In so doing, Mesa argues, the Board contradicted its own precedent. He points to two cases: *Matter of Sanchez-Linn*, 20 I&N Dec. 362 (BIA 1991), in which the Board explained that "good moral character is not destroyed by 'a single lapse,'" *id.* at 366, and *Matter of Castillo-Perez*, 27 I&N Dec. 664 (A.G. 2019), in which the Attorney General held that two convictions for drunk driving establish a presumption that an alien lacks good moral character, *id.* at 664. Since there is only one drunk-driving conviction here, Meza accuses the Board of contradicting *Matter of Castillo-Perez* by erroneously presuming a lack of good moral character based on only one offense.

We can assume that Meza is correct that a single drunk-driving offense does not automatically preclude an immigration judge from finding good moral character. Compare 8 U.S.C. § 1101(f) (listing eight circumstances that bar a good-moral-character determination). Nevertheless, there are three problems with his argument. First, he reads the BIA's language in *Matter of Sanchez-Linn* too broadly. That case was careful to distinguish a *lapse*, on the one hand, from a more serious offense, on the other. See 20 I&N Dec. at 366. Second, nothing in the Board's and the immigration judge's opinions suggests that they considered Meza's drunk-driving offense in isolation. Indeed, both opinions mention the offense alongside other relevant offenses, including Meza's subsequent vehicle-related violations and his use of a fabricated social security number. Finally, Meza also overreads *Matter of Castillo-Perez*. That case does no more than create a presumption that two drunk-driving offenses prevent a finding of good moral character. It does not preclude the Board from assigning substantial weight to a single incident of drunk driving, should the facts persuade it to do so. In short, nothing suggests that the Board contradicted its own precedent.

As a fourth error, Meza alleges that the Board and the immigration judge ignored evidence of his rehabilitation following his drunk-driving offense. The record does not support this argument. Neither the Board nor the immigration judge ignored evidence of Meza's rehabilitation—indeed, both mention that Meza had presented such evidence. Ultimately, though, they determined that any evidence of rehabilitation was outweighed by Meza's criminal history, including offenses that postdated his drunk-driving conviction. That determination is, at its core, a discretionary one that we may not review.

Finally, Meza contends that the immigration judge and the Board erred by disregarding oral testimony and written statements concerning his good moral character, including letters that had been sent to the immigration judge on his behalf. But once again, the problem was not disregard of these materials; it was their lack of persuasiveness.

Nothing suggests that either the immigration judge or the Board ignored the testimony provided by Meza and his wife concerning Meza's character. To the contrary, the immigration judge summarized this evidence at length in her opinion. Although the testimony did not feature prominently in the analysis section of her decision, the judge confirmed that she had evaluated "all the record evidence and testimony as a whole" and determined that Meza's criminal record outweighed other considerations. The brevity of the judge's analysis does not amount to a legal error. As we have previously said, "the BIA is not required to 'write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (quoting *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987)). That test is easily met here.

Meza's assertion that the immigration judge and the Board ignored written statements of his character comes closer to the mark, but it is still not enough. Although it is true that neither the Board nor the immigration judge specifically mentioned the letters that Meza received on his behalf, this observation alone is not dispositive. Even if we assume that the immigration judge and Board ignored this evidence, Meza must also show that "the ignored letters were central to his claims, and

… 'may have had the potential to change the outcome of the hearing.'" *Perez-Fuentes v. Lynch*, 842 F.3d 506, 512 (7th Cir. 2016) (quoting *Delgado v. Holder*, 674 F.3d 759, 768 (7th Cir. 2012)). He has not done so. The letters in question primarily attest to Meza's work ethic and maintain that he is a good father who is committed to his family. This information is largely, if not entirely, cumulative of Meza's and his wife's testimony about his character, family life, and employment history, all of which the immigration judge described at length in her opinion. Since Meza does not point to any particular evidence that might have altered the immigration judge's or the Board's analysis, these letters do not support a grant of the petition.

C

In addition to challenging the immigration judge's good-moral-character determination, Meza's petition also raised a number of alleged defects with the immigration judge's hardship analysis. The Board, however, affirmed the immigration judge's decision only on the good-moral-character point; it did not address hardship. Since a failure to demonstrate good moral character is a sufficient basis for denying cancellation of removal, the Board had no need to go further. See *INS v. Abudu*, 485 U.S. 94, 105 (1988) ("[T]he BIA may leap ahead … over … threshold concerns … and simply determine that even if they were met, the movant would not be entitled to … relief."). Since we affirm the Board's decision on good-moral-character grounds, it is not necessary to revisit the immigration judge's hardship analysis. *Perez-Fuentes*, 842 F.3d at 510, 513.

The petition for review is DENIED.