In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 23-2874

MARIA E. SMITH,

*Plaintiff-Appellant,*

*v.*

MERRICK B. GARLAND, Attorney General of the United States, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 23-cv-00490-BHL — **Brett H. Ludwig**, *Judge.*

---

ARGUED APRIL 10, 2024 — DECIDED JUNE 3, 2024

---

Before RIPPLE, HAMILTON, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. United States immigration authorities denied Maria Elvia Smith, a native and citizen of Mexico, legal status in the U.S. Smith sued, alleging the agencies responsible for this decision violated the Administrative Procedure Act, agency regulations, and the Fifth Amendment. The district court correctly dismissed her complaint, so we affirm.

## I.  Background

### A. Smith's Visa Petition and Agency Investigation

Under the Immigration and Nationality Act, a United States citizen may petition for the allocation of a visa to his noncitizen spouse. 8 U.S.C. §§ 1153(a), 1154(a). To do so, the citizen files a Form I-130, called a Petition for Alien Relative, to classify his noncitizen spouse as an immediate relative. *Id.* §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i). Should the citizen die while the I-130 petition is pending, the petition automatically converts to an I-360, Widow(er) Petition, as long as the surviving noncitizen spouse was not legally separated from the citizen at the time of death and did not remarry. 8 C.F.R. § 204.2(i)(1)(iv). This appeal involves Smith's unsuccessful I-360 petition and her legal challenges to that determination.

From 1973 to 2001, Smith was married to Francisco J. Hernandez Rico, also a Mexican native and citizen. They had a son. Just after their marriage dissolved, Smith and Rico tried to enter the United States on May 13, 2002, at the Hartsfield International Airport in Atlanta, Georgia. Immigration inspectors detained and questioned them. The inspectors later reported that they presented themselves as a married couple. Immigration authorities denied Smith and Rico admission into the country and gave them the opportunity to withdraw their application for admission.

Two years later, Smith and Rico applied for nonimmigrant visas at the United States consulate in Mexico City, again presenting themselves as a married couple. Officials issued the visas, and both traveled to the United States.

After arriving in this country, Rico married an American citizen. That citizen then filed a Form I-130 on Rico's behalf,

which was denied by the U.S. Citizenship and Immigration Services. USCIS noted that during Rico's marriage to the American citizen, Smith and Rico shared a joint bank account and a residence in Wauwatosa, Wisconsin. Rico sought immigration status as the spouse of a U.S. citizen again in 2011. His petition stated he and Smith lived together from January 2006 through March 2011 in Wauwatosa, though at a different address than previously identified by USCIS.

Smith herself married a United States citizen—Arlo Henry Smith, Sr.—in December 2012.[1] Five months later, Arlo filed an I-130 petition to classify Smith as his immediate-relative spouse based on their marriage. Smith submitted 20 items in support of this petition, including information that she lived at the same Wauwatosa residence as Rico from May 2008 through October 2009. Arlo died in February 2014, and Smith's I-130 petition automatically converted to an I-360 petition. *See* 8 C.F.R. § 204.2(i)(1)(iv).

Rico later sought a divorce from his U.S. citizen spouse. During the divorce proceedings, Rico said he resided at an apartment in Milwaukee, Wisconsin. A few months later, Rico filed an I-130 petition on behalf of the son he shared with Smith, using that apartment address. In June 2014, an immigration officer visited the apartment. No one was home, but the mailbox listed the names of Rico, Smith, and their son. Immigration authorities also obtained a copy of the lease agreement from the apartment's registered agent; that agreement listed Rico, Smith, and their son as living at the residence and contained their names and signatures. In a July 2015

---

[1] We refer to Mr. Smith as Arlo to avoid confusion between him and the appellant.

interview, Smith provided USCIS a sworn statement that she, Rico, and their son lived (and continued to live) at the Milwaukee apartment together before she married Arlo.

**B. Immigration Proceedings**

On August 19, 2015, USCIS issued Smith a Notice of Intent to Deny her I-360 petition. In the Notice, USCIS described 14 of the 20 items Smith submitted in support of her visa petition as evidence of Smith's "continued [] close relationship" with Rico during her marriage to Arlo that continued "long after [her] nominal divorce[]" from Rico. That evidence included the two times Smith and Rico presented themselves to immigration officials as a married couple, as well as their living together at the different Wisconsin residences from 2006 to 2014. This supported the conclusion that Smith's marriage to Arlo was "invalid for immigration purposes."

The Notice provided that Smith could submit further evidence to support her petition and to counter the proposed denial. Smith submitted three additional documents, including affidavits from her and Rico. USCIS found this additional evidence unpersuasive, as Smith's and Rico's statements about the couple's interactions with immigration officials at the Atlanta airport in 2002 "lack[ed] credibility." In particular, Smith's response that Rico was travelling with her to provide English-language assistance was contradicted by Rico's sworn statement to immigration inspectors and other evidence from the inspectors. USCIS also explained that Smith "provided false and misleading information to USCIS officers in hopes of obtaining immigration benefits" at her July 2015 USCIS interview. In the interview, Smith denied ever travelling with Rico after their 2001 divorce. But her assertion was contradicted by the pair's travel together to Atlanta in 2002.

So, in April 2019, following a "careful and complete review of the record and testimony," USCIS denied Smith's I-360 petition. The agency concluded that Smith failed to prove by a preponderance of the evidence that her marriage to Arlo was bona fide for immigration purposes. Though Smith had submitted some documents to establish a marriage, in light of the false and misleading information she provided to immigration officers in 2002 and in 2015, she was "not considered to be credible."

Smith appealed to the Board of Immigration Appeals. Conducting its own de novo review of USCIS's decision, the Board affirmed the denial of Smith's I-360 petition. After considering all the information Smith submitted, the Board confirmed USCIS's conclusion that Smith could not meet her burden to prove a bona fide marriage because Smith's evidence could not "overcome the derogatory information detailed in the [Notice] of [Smith's] continued cohabitation with her prior spouse."

### C. District Court Proceedings

Smith sued the United States Attorney General, USCIS, and the Board, alleging that the agencies improperly denied her I-360 petition and violated her Fifth Amendment right to due process. The government moved to dismiss her complaint and attached the Notice.

The district court granted the motion, finding she did not plausibly allege that USCIS and the Board: (1) acted improperly in denying her petition; (2) acted without observance of the procedure required by law; and (3) substantively violated the Fifth Amendment's Due Process Clause. On its first finding, the district court reasoned that the agencies' decision

rested on facts established in the record and supplied sufficient rationale based on those facts. In doing so, the agencies applied the proper standards and burden of proof and validly elected not to credit Smith's statements in light of her past untruthfulness. As to its second finding, the district court rejected Smith's argument that the agencies improperly ignored eight pieces of evidence. The record did not show that the agencies ignored the evidence, and "failure to mention is not failure to consider," so Smith could not plausibly allege that the agencies failed to follow proper procedures in dismissing her I-360 petition. For its third finding, the district court reasoned, "non-citizens have no historically recognized right to reside in the United States with their citizen spouses, much less reside in the United States after their citizen spouses have died." So, Smith could not plausibly allege a substantive due process claim.

The district court entered judgment dismissing the case, and Smith timely appealed.

## II. Discussion

This court reviews de novo a dismissal for failure to state a claim. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "[T]he plaintiff must allege 'more than a sheer possibility that a defendant has acted unlawfully.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (cleaned up).

The Administrative Procedure Act provides for judicial review of final agency actions, like the denial of an I-360 petition. *See* 5 U.S.C. §§ 702, 704. This court reviews agency determinations with great deference, *see F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009), and the court cannot substitute its judgment for that of the agency, *see Dep't of Com. v. New York*, 588 U.S. \_\_\_\_, 139 S. Ct. 2551, 2571 (2019).

The APA authorizes us to set aside decisions that are, among other things, arbitrary, capricious, or not supported by substantial evidence. *See* 5 U.S.C. § 706(2). Agency action is arbitrary and capricious if the agency:

> [R]elied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Said another way, the arbitrary and capricious standard requires an agency to do its homework; decisions that overlook relevant record evidence or lack a satisfactory answer do not pass muster. *See id.*; *see also F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."). Substantial evidence is what "a reasonable mind would find adequate to support [the challenged] conclusion." *Ghaly v. I.N.S.*, 48 F.3d 1426, 1431 (7th Cir. 1995).

More specific standards govern visa-petition proceedings. The petitioner bears the burden of establishing eligibility for the benefit sought by a preponderance of the evidence. *See* 8 U.S.C. § 1361; *see also, e.g.*, *Matter of Brantigan*, 11 I. & N. Dec. 493, 493 (B.I.A. 1966). To establish a spouse's eligibility for classification as an immediate relative based on marriage, the marriage must be bona fide. *See Matter of Laureano*, 19 I. & N. Dec. 1, 2 (B.I.A. 1983). The test for a bona fide marriage is whether, at the inception of the marriage, "the two parties have undertaken to establish a life together and assume certain duties and obligations." *Lutwak v. United States*, 344 U.S. 604, 611 (1953). The agency and "courts look to both the period before and after the marriage" when assessing the couple's intent at the time of the marriage. *Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010).

As here, in the adjudication of I-360 petitions, USCIS may issue a Notice of Intent to Deny before issuing its decision on the petition. 8 C.F.R. § 103.2(b)(8)(iii). The written Notice "will specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond." *Id.* § 103.2(b)(8)(iv). Where "the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by [USCIS] and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered … ." *Id.* § 103.2(b)(16)(i); *see Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009). "A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or

petitioner" except when such information is classified. 8 C.F.R. § 103.2(b)(16)(ii).

Smith argues her complaint plausibly alleges that (1) USCIS and the Board acted improperly in denying her I-360 petition; (2) USCIS and the Board acted without observance of procedure required by law; and (3) USCIS and the Board violated her procedural and substantive due process rights under the Fifth Amendment.[2]

**A. Agency Action**

Smith asserts the agencies improperly ignored evidence and acted arbitrarily and capriciously in denying her I-360 petition. Neither claim has merit.

First, Smith argues the Board ignored at least eight items of documentary evidence because USCIS "does not mention" this evidence. Under the APA, the agency "need only *consider* the evidence;" it need not mention every piece of evidence it considered. *Perez-Fuentes v. Lynch*, 842 F.3d 506, 512 (7th Cir. 2016) (emphasis in original); *see also Vergara-Molina v. I.N.S.*, 956 F.2d 682, 685 (7th Cir. 1992) (noting that an agency "need not … write an exegesis on every contention") (citation omitted).

Here, USCIS did just that. The agency attested to "a careful and complete review of the record and testimony," and the Board confirmed after "de novo review of the evidence of record." Nothing in the regulations or guidelines that Smith

---

[2] Smith abandons her arguments that the agencies made a marriage fraud finding and applied the incorrect standards and burdens of proof. She waives these arguments by failing to raise or meaningfully present them in her opening brief. *Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023).

alludes to imposes any additional requirements. Thus, the district court correctly concluded that "[n]othing in the Complaint or record before [it] suggests that USCIS and the [Board] did not satisfy this minimal requirement" to consider the evidence.

Contrary to Smith's claim, the agencies specifically mention four of the eight items Smith alleges they ignored. The district court correctly found that the only evidence not mentioned in the Notice or the denial decisions were four declarations from friends and family (not six as Smith alleges).

Smith does not challenge this finding but avers that "the absence of any discussion of six statements by credible witnesses" was arbitrary and capricious. The agencies did not discuss each of the six statements. But in light of the other record facts, it was not unreasonable for those statements to be given less weight. The agencies possessed ample evidence of Smith's continued relationship with Rico. Paired with Smith's inconsistent statements to immigration officers about her relationship with Rico (as early as 2002 and as late as 2015), this information casts a shadow over the statements.

Moreover, the contention that the agencies failed to consider certain evidence is a quibble with how the agencies weighed the evidence. But we cannot reweigh the agencies' own balancing of the evidence. *See Fox Television Stations, Inc.*, 556 U.S. at 513 (reaffirming that "a court is not to substitute its judgment for that of the agency."). The agencies fulfilled their obligation by considering the evidence in Smith's case and announcing the legal basis for its decision. *See Ogbolumani*, 557 F.3d at 735. The district court correctly dismissed this claim.

Next, Smith claims the agencies acted arbitrarily and capriciously by concluding that she had a continued relationship with her ex-husband, which meant her marriage to Arlo was not bona fide. Again, under APA review, an agency decision must stand if a "reasonable mind would find adequate [] support" for the decision. *Ghaly*, 48 F.3d at 1431; *Ogbolumani*, 557 F.3d at 733.

Smith initially argues the agency made a factual error. The agency (wrongfully, Smith says) found she was cohabitating with her ex-husband while married to Arlo. But it does not matter who is correct. Neither USCIS nor the Board expressly made or relied on this precise finding. And the agencies still could have concluded that other evidence of her close relationship with Rico, plus her inconsistent statements about that marriage, undermined her assertion that her marriage to Arlo was bona fide.

The agencies' decision is not arbitrary and capricious. All the court must do to make such a reasonable finding is have "a rational connection between the facts found and the [determination] made." *Motor Vehicles Mfrs. Ass'n of U.S.*, 463 U.S. at 43 (quotation omitted). Here, the facts—Smith's inconsistent statements (hindering her credibility) and evidence of a continued relationship with Rico (including shared addresses, and her own acknowledgement that she lived with Rico and their son)—support the district court's determination that "[n]othing in [] Smith's Complaint plausibly alleges the agencies' credibility determinations fell outside a zone of reasonableness."

Smith's related argument that the agencies did not adequately articulate their reasons also fails. Under the APA, the agencies need only "examine the relevant data and articulate

a satisfactory explanation for [their] action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks omitted). USCIS and the Board provided rational explanations—anchored in the record—describing why Smith's evidence did not establish a bona fide marriage. The agencies' conclusions are rationally connected to Smith's continued, close relationship with her ex-husband despite their divorce in 2001 and her provision of false and misleading statements to immigration officials. So, the agencies' decision was reasonable.

### B. Agency Procedure

Smith argues next that the agencies failed to observe the procedures required by law. Specifically, she asserts that USCIS violated 8 C.F.R. §§ 103.2(b)(16)(i) and (ii) by providing her with only a summary—as opposed to the full documentation—of the adverse information on which it based its denial of her I-360 petition.

When USCIS intends to issue an adverse decision based on derogatory information unknown to the petitioner, it must "advise[] [petitioner] of this fact and offer[] an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered … ." 8 C.F.R. § 103.2(b)(16)(i). Additionally, the agency's decision must "be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner … ." 8 C.F.R. § 103.2(b)(16)(ii). This section does not command the production of the actual "record of proceeding"; it directs the agency to disclose only the "information" that is "contained in the record of proceeding." 8 C.F.R. § 103.2(b)(16)(ii). USCIS complies with this regulatory requirement when it provides

visa petitioners with a summary of a sworn statement against them. *See, e.g.*, *Ghaly*, 48 F.3d at 1434–35.

In *Ghaly*, this court addressed the same argument Smith raises. There, the court clarified that the "regulations do not mandate that [petitioners] must be provided an opportunity to view each and every sworn statement." *Id.* at 1434. Rather, a summary suffices to provide notice to a petitioner regarding the grounds of the agency's decision—even if "summarized in a single sentence." *Id.* at 1435. As the court explained, the regulation mandates the agency "explain[] its intentions plainly and clearly[]" to permit an applicant's rebuttal of the derogatory information. *Id.* Moreover, the submission of rebuttal evidence in response to the agency's intent to revoke its approval of the petition was evidence that the summary was sufficient. *Id.*

This court reached a similar conclusion in *Ogbolumani*. Recognizing that a court's "review is deferential, and nit-picking the exact characterization of the evidence would overstep" its role, the court concluded 8 C.F.R. § 103.2(b)(16)(i) "does not require USCIS to provide, in painstaking detail, the evidence of fraud it finds." *Ogbolumani*, 557 F.3d at 735. Rather, a notice is sufficient under § 103.2(b)(16)(i) when it provides enough information to permit a petitioner to "rebut the evidence." *Id.*

Here, USCIS acted in accord with its responsibilities under § 103.2(b)(16)(ii) when it disclosed to Smith—in its denial decision incorporating the Notice—the information on which it relied. This information included a description of the 2002 Atlanta airport encounter when Smith and Rico presented themselves to immigration inspectors as a married couple. USCIS

complied with the procedures required by law, defeating Smith's second argument.[3]

**C. Fifth Amendment**

Smith also alleges that the USCIS violated her procedural and substantive due process rights under the Fifth Amendment.

*Procedural Due Process Claim*. Smith avers the agency procedurally erred when it "denied [her] the meaningful hearing the Constitution requires" by failing to provide her with her ex-husband's sworn statement from the Atlanta airport encounter.[4]

To properly state a procedural due process claim, a plaintiff must establish: (1) a deprivation of a protected liberty or property interest; and (2) the deprivation occurred without due process. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). A statutorily conferred, non-discretionary benefit may be a protected property or liberty interest. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (a liberty or property interest is "created" and "defined

---

[3] Smith contends, without more, that the district court failed to address her inability to obtain the record of the Atlanta airport interaction with immigration officials via a Freedom of Information Act request. But governing regulations did not require the agency to do so.

[4] Smith argues first that she holds a procedural due process interest in Arlo's I-130 petition because "the adjudication of an I-130 [petition] isn't committed by Congress to the agencies' discretion." In her reply brief, she reframes it as an interest in the fair and proper adjudication of Arlo's I-130 petition. Regardless, Smith did not raise the argument below and has waived it. *Bradley*, 59 F.4th at 897.

by existing rules or understandings that stem from an independent source such as state law" but "is not a protected entitlement if government officials may grant or deny it in their discretion."). But "hope for a favorable exercise of administrative discretion does not qualify." *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011).

Smith's problem—even assuming she has adequately stated a protected liberty interest—is that she has received all the process due to her. Agency procedures require notice and an opportunity to respond. *See* 8 C.F.R. § 103.2(b)(16). The agencies afforded Smith both. *See Ghaly*, 48 F.3d at 1434–35 (an agency complies with its regulatory obligations when it provides notice of the information it relied on and an explanation of its decision). Smith was advised through the Notice of the derogatory information detrimental to the petition and USCIS's intent to deny it. Then she was given the opportunity to respond with countervailing evidence and to appeal to the Board. Smith took up both offers. And now, she does not identify what additional procedures were required. So, her procedural due process argument fails.

*Substantive Due Process Claim.* Smith alleges the Board violated her rights by denying her petition and making it impossible for her to remain in the United States. Specifically, she asserts that because Arlo "had a liberty interest in family and a home in this country which survives him and went to [her,]" she has a "fundamental liberty interest in family and a home in the United States."

A substantive due process claim may proceed where the plaintiff asserts a deprivation of a right that is "so rooted in the traditions and conscience of our people as to be ranked fundamental." *Reno v. Flores*, 507 U.S. 292, 303 (1993) (citation

and quotation marks omitted). Plaintiffs must provide a "'careful description' of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 701, 721 (1997) (internal citations omitted). Anything less than a careful description is insufficient, because "extending constitutional protection to an asserted right or liberty interest … place[s] the matter outside the arena of public debate and legislative action." *Id.* at 720.

Smith's asserted liberty interest is that of a United States citizen residing in the United States with a noncitizen spouse. But the Supreme Court has not recognized this interest as fundamental. And a plurality of the Court has rejected a U.S. citizen's claim that the government's denial of her noncitizen husband's visa application violated her constitutional rights, precisely because it would run afoul of Congress's constitutionally prescribed power to regulate immigration generally and spousal immigration more specifically. *Kerry v. Din*, 576 U.S. 86, 88, 95–97 (2015). Our court has declined to take a position on this issue. *See Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019). We do not see this case as the vehicle to do so.

\*          \*          \*

For these reasons, we see no error in the agencies' denial of Smith's I-360 petition, and we AFFIRM the district court's dismissal of Smith's complaint.