In the

# United States Court of Appeals

### For the Seventh Circuit

No. 23-2480

PILAR SANDOVAL REYNOSO,

*Petitioner*,

*v.*

MERRICK B. GARLAND, Attorney General of the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A200-779-379

ARGUED MARCH 28, 2024 — DECIDED JULY 23, 2024

Before BRENNAN, SCUDDER, and LEE, *Circuit Judges*.

BRENNAN, *Circuit Judge*. The Department of Homeland Security served Pilar Sandoval Reynoso with a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for unlawfully residing in the United States. Sandoval applied for cancellation of removal, which an Immigration Judge denied. The IJ concluded that Sandoval did not establish ten years' continuous physical presence, or show

that his qualifying relative children would suffer exceptional and extremely unusual hardship. Sandoval also did not merit a favorable exercise of discretion. The Board of Immigration Appeals affirmed the IJ's denial, including the discretionary finding.

Sandoval petitions for our review. We lack jurisdiction to review the IJ's discretionary decision to deny Sandoval's application for cancellation of removal under 8 U.S.C. § 1229b(b)(1). And we lack jurisdiction to consider the Board's review of the IJ's decision. We therefore dismiss Sandoval's petition, and we need not review his remaining claims.

## I.

### A. Application for Cancellation of Removal

In May 2012, DHS served Sandoval with a Form I-862 Notice to Appear, filed it with the United States Department of Justice Executive Office for Immigration Review, and began removal proceedings against him. The Notice alleged that Sandoval was not a United States citizen or national; was a Mexican native and citizen; arrived in this country at an unknown location on an unknown date; and entered the U.S. without having been admitted or paroled after inspection by an immigration officer. The Notice charged Sandoval with removability under 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without admission or parole after inspection.

The Notice did not specify the date and time of the first hearing. The immigration court later scheduled the first hearing for May 29, 2012. Sandoval attended this hearing with counsel. The IJ did not accept arguments or filings at that

hearing and subsequently scheduled a new one on July 30, 2013.

Sandoval attended that hearing and was represented by new counsel. Without objecting to the Notice, Sandoval admitted to its allegations and conceded removability as charged. He also voiced his intention to apply for cancellation of removal for non-permanent residents. He claimed prima facie eligibility for cancellation of removal and asserted that he last entered this country in October 1999, had four U.S. citizen children, and possessed no disqualifying convictions. The IJ asked whether Sandoval had ever left the U.S. He answered that he left on September 6, 2003, after accepting a voluntary return. He then reentered this country one month later. The IJ asked Sandoval about his return to Mexico in September 2003, and he answered that Border Patrol agents "took [him] back September 15 or September 18 of 2003." At the hearing the IJ questioned whether Sandoval was returned to Mexico in a manner that broke continuous physical presence and requested evidence from both parties on the issue. DHS submitted four Forms I-213, Record of Deportable/Inadmissible Alien. Sandoval submitted those same four forms, in addition to employment information and tax returns. These forms showed four voluntary returns to Mexico, one in 1999 and three in September 2003. At a later hearing, the IJ accepted into evidence without objection all documents the parties presented.

In December 2020, Sandoval updated his application for cancellation of removal with supporting documentation. In a pre-hearing statement, he claimed he could establish ten years of continuous presence in the U.S., and he met all statutory eligibility requirements. Additionally, he argued he merited a

favorable exercise of discretion. After receiving evidence, the IJ set a merits hearing. Sandoval testified that he started working in this country in 1999, began paying taxes in 2000, and bought a home in 2005. He also explained he obtained a driver's license in 2004 and again in 2012—after receiving two infractions for driving without a license.

Sandoval then testified about his family. He said he was married, and he and his wife were from San Juan Xoconusco in Mexico, where their families still lived. His four children were all born in the U.S. and are thus American citizens. He explained one of his children had dyslexia and received free special education services in public school. On this point, Sandoval submitted articles by the U.S. Department of State, including one that said schools offering special education programs in Mexico "may not be reliable in some instances." Sandoval said his child only had one year of high school left and she would not receive further assistance from U.S. schools after graduation. He also explained that another child had asthma. Sandoval stated that if he was returned to Mexico, his wife and children would go with him.

Sandoval also testified about his numerous illegal entries into the U.S. and returns to Mexico. In July 1999, a couple weeks after he unlawfully entered this country, immigration enforcement authorities sent him back to Mexico. Sandoval illegally reentered the U.S. in October 1999. Then, on September 6, 2003, he was charged with driving under the influence of alcohol. The police called immigration authorities, who told Sandoval he "had to return to Mexico because [he was] undocumented." According to one of the Record of Deportable/Inadmissible Alien forms, the immigration officer explained to Sandoval that he had the option of voluntary return

or the issuance of a Notice to Appear and the possibility of an order of removal. But "Sandoval did not want to risk getting formally deported and decided to return voluntarily in order to try to obtain a visitor's permit." So, Sandoval voluntarily returned to Mexico on September 12, 2003. He testified that Border Patrol agents told him he could "fight [his] case from here" or "get a permit to come back from Mexico." He "chose to go back to Mexico" with the intention of re-entering the U.S. illegally to be with his family.

Immediately after his return to Mexico, Sandoval began attempting to illegally re-enter this country. During two attempts, on September 20 and 28, 2003, he encountered immigration officials at the border. Again, he chose to voluntarily return to Mexico rather than stay in immigration detention and wait for a hearing. When immigration authorities provided him the same option as before "to fight [his] case" or "sign and go back," he "signed and went back." Near the end of September 2003, Sandoval illegally re-entered the U.S. After accepting all the testimony and evidence, including the record of Sandoval's illegal reentries, the IJ considered Sandoval's objection and the relevant law to make his decision.

### B. IJ and Board Decisions

An IJ must determine whether an applicant seeking cancellation of removal has established (A) 10 years' continuous physical presence, (B) good moral character during that time, (C) the absence of a disqualifying conviction, and (D) "that removal would result in exceptional and extremely unusual hardship to the [applicant's] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1). The applicant also bears the burden of proving that he merits relief in the

exercise of discretion. *See id.*; *Kucana v. Holder*, 558 U.S. 233, 246 (2010).

On February 9, 2021, the IJ denied Sandoval's application for cancellation of removal and his alternative application for voluntary departure. He ordered Sandoval removed to Mexico. The IJ found that Sandoval had not established ten years' continuous physical presence, and he had not shown that his children would suffer exceptional and extremely unusual hardship. Importantly, he did not merit a favorable exercise of discretion.

On the discretionary point, the IJ relied on Sandoval's "history of criminal and civil infractions in Wisconsin and his history of repeatedly violating the immigration laws by entering the United States illegally." The IJ referenced Sandoval's two citations for driving without a license and noted that Sandoval's 2003 arrest and plea to a DUI was "serious" and "put other members of the community at risk." The IJ found "[t]he most serious negative factor" was Sandoval's repeated violations of federal immigration laws. The IJ counted at least five unlawful entries between July 1999 and October 2003. The IJ also observed that Sandoval chose voluntary return over the opportunity to appear before an IJ because he "thought it would be easier to illegally re-enter the United States, and he apparently lied to the immigration officer when he said he would 'try to obtain a visitor's permit.'"

The IJ considered the positive equities, including Sandoval's four U.S. citizen children and the hardships they would experience if they accompanied Sandoval back to Mexico. The IJ also noted Sandoval's history of paying taxes, engaging in steady work, and the absence of recent arrests. But the IJ determined that Sandoval's DUI and "many illegal entries,

especially given the circumstances of his September 2003 return to Mexico," outweighed the "significant" positive factors. So, exercising his discretion, the IJ denied Sandoval's application for cancellation of removal.

Sandoval appealed the IJ's decision to the Board. The Board affirmed and declined to remand, explaining in part that the IJ "properly denied the respondent's application for cancellation of removal as a matter of discretion." Sandoval petitions for our review.

## II.

When a petitioner challenges an unfavorable ruling on a cancellation of removal application, judicial review is limited to legal and constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (D); *Patel v. Garland*, 596 U.S. 328, 338–39 (2022) (explaining that § 1252(a)(2)(D) "preserves review of constitutional claims and questions of law," but "judicial review of factfinding is unavailable."); *Perez-Fuentes v. Lynch*, 842 F.3d 506, 508 (7th Cir. 2016) ("Generally, we lack jurisdiction to review denials of discretionary relief in immigration proceedings, including cancellation of removal. … But, … we retain jurisdiction to review constitutional claims and questions of law raised in a petition for review."). An IJ's factual findings and ultimate exercise of discretion are not reviewable. *See Patel*, 596 U.S. at 338–39. The court has "interpreted the phrase 'questions of law' in [section 1252(a)(2)](D) narrowly, holding that legal questions are present only when the Board misinterprets a statute, regulation, constitutional provision, or its own precedent, applies the wrong legal standard, or fails to exercise its discretion at all." *Martinez-Baez v. Wilkinson*, 986 F.3d 966, 970 (7th Cir. 2021) (cleaned up).

Sandoval argues that this court has jurisdiction to review the IJ's discretionary denial of his application for cancellation of removal. Pointing to *Kucana*, he claims this case involves regulations that may be reviewed. 558 U.S. at 246–48 (explaining that courts' jurisdictional stripping over discretionary decisions applies only to statutes). But Sandoval is incorrect. The requirements necessary for nonpermanent residents to receive cancellation of removal are codified in 8 U.S.C. § 1229b(b)(1). As this case directly involves a statute, Sandoval incorrectly relies on *Kucana*.

Under 8 U.S.C. § 1229b(b)(1):

The Attorney General *may* cancel removal of, and adjust []the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

> (B) has been a person of good moral character during such period;

> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1)(A)–(D) (emphasis added).

As explained in *Kucana*, § 1252(a)(2)(B)(i) dictates that courts cannot review a judgment granting relief under § 1229b. 558 U.S. at 246 (citing 8 U.S.C. § 1252(a)(2)(B) (§ 1252(a)(2)(B)(i) "places within the no-judicial-review category 'any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255.'")). Recently, in *Wilkinson v. Garland*, 601 U.S. 209 (2024), the Court clarified that only a portion of § 1229b is considered a "grant" of relief, thereby stripping courts of jurisdiction. The Court explained that even "if the IJ decides a noncitizen is *eligible* for cancellation of removal at step one" by establishing factors (A)–(D), "his step-two discretionary determination on whether or not to *grant* cancellation of removal in the particular case is not reviewable as a question of law." *Id.* at 225 n.4; *see also Lopez v. Garland*, 105 F.4th 907, 911 (7th Cir. 2024) (explaining that Congress reserved the IJ's discretionary decision for the Executive Branch (citing *Wilkinson*, 601 U.S. at 225 n.4)).

In other words, we can review an IJ's decision about whether a noncitizen is eligible for cancellation in very limited circumstances. But we cannot review an IJ's additional discretionary decision to grant such cancellation. *See* 8 U.S.C. § 1229b(b)(1) ("The Attorney General *may* cancel removal of … an alien who is inadmissible or deportable … .") (emphasis added). That decision is a question of law unreviewable within the meaning of 8 U.S.C. § 1252b(a)(2)(D). So, the IJ's discretionary decision to deny Sandoval's application for cancellation of removal cannot be reviewed.

As for the Board's decision, this court generally lacks jurisdiction to review such a decision on a motion to reopen or reconsider if the court "lack[s] jurisdiction over the

underlying order." *Cruz-Mayaho v. Holder*, 698 F.3d 574, 577
(7th Cir. 2012) (citing *Martinez-Maldonado v. Gonzales*, 437 F.3d
679, 683 (7th Cir. 2006). Sandoval may not seek review of the
ultimate discretionary determination by framing the issue as
a challenge to the Board's refusal to remand proceedings.

### III.

We lack jurisdiction to review the IJ's discretionary deci-
sion to deny Sandoval's application for cancellation of re-
moval under 8 U.S.C. § 1229b(b)(1). And we lack jurisdiction
over the Board's review of that decision. As the IJ's discretion-
ary decision controls the outcome of Sandoval's application,
we need not consider his remaining claims about continuous
physical presence and exceptional and extremely unusual
hardship.

We DISMISS in part Sandoval's petition for review for lack
of jurisdiction, and we DENY the remainder of his petition.